OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Two questions lie at the heart of this appeal. First, is the indemnification sued on an "instrument for the payment of money only” within CPLR 3213? Second, is the indemnification a guaranty by the individual defendants of the corporation’s obligation? We answer both questions in the negative: the individual defendants’ indemnification is neither "an instrument for the payment of money only” within CPLR 3213 nor a guaranty. The summary remedy is therefore not available to plaintiff, and indeed summary judgment should be granted against him dismissing his action against the individual defendants.
 

 Prior to March 5, 1992, plaintiff and the five individual defendants constituted all of the shareholders of Sinorm Deli,
 
 *441
 
 Inc., a New York corporation. To resolve irreconcilable differences among them, Sinorm agreed to buy out plaintiff’s one-quarter interest in the corporation. The transaction was set out in a stock agreement dated March 5, 1992 with Sinorm as buyer, plaintiff as seller and the individual defendants as the remaining shareholders.
 

 The purchase price was $250,000 to be paid by the corporation as follows: $50,000 at the closing in exchange for plaintiffs shares, and a $200,000 promissory note with interest of 7% per year to be paid in monthly installments. The installments were to be $1,667.67 per month for 36 consecutive months, then $2,500 per month until December 5, 2002, and a final payment of $1,696 on January 5, 2003.
 

 The stock agreement further provided that the note was collateralized by an agreement which granted plaintiff a purchase-money first security interest in Sinorm’s assets; an assignment to plaintiff of Sinorm’s lease; and a sublease between plaintiff as sublandlord and the corporation as subtenant. The lease and the assignment were to be deposited in escrow with plaintiff’s attorneys under a written escrow receipt. Sinorm represented in the stock agreement that until full payment of the note was made it would not without plaintiff’s written consent take any action which "will or might impair [its] obligations” under the stock agreement, including transferring, selling, assigning or encumbering any of its assets or properties.
 

 The stock agreement also contained both default and indemnification provisions. Under the default provision, failure to make the monthly installment payment, after a 10-day cure period, allowed the holder of the note to call it due in its entirety. The indemnification provision (art 10.1 of the stock agreement) stated:
 

 "Buyer’s Indemnification.
 
 Buyer and the Remaining Shareholders shall indemnify and hold Seller, his heirs, successors and assigns, harmless from and against all costs, losses, claims, taxes, liabilities, fines, penalties, damages and expenses (including any interest and court costs imposed in connection therewith and reasonable fees and disbursements of counsel) incurred by any of them in connection with any breach of any of the representations, warranties, covenants or agreements made by Buyer in this Agreement as well as all li
 
 *442
 
 abilities and obligations accruing from 7/23/91 and thereafter.
 

 "Seller’s Indemnification.
 
 Seller shall indemnify the Buyer and the Remaining Shareholders, their heirs, successors and assigns safe and harmless from and against any and all unpaid corporate taxes not reflected on Buyer’s books and records up to and including July 31, 1991 to the extent of twenty-five (25%) percent of any assessment required to be paid by Buyer in excess of the taxes previously paid by the Buyer.”
 

 A separate indemnification agreement mirroring the indemnification language of the buyer’s indemnification was also signed by the parties at closing. During the closing, the last lines of the buyer’s indemnification — reading "as well as all liabilities and obligations accruing from 7/23/91 and thereafter” — were handwritten into article 10.1 and the indemnification agreement. At the closing, the contract was executed, the corporation paid the $50,000 and it delivered Sinorm’s $200,000 note.
 

 Promptly after Sinorm’s default on the note installment due November 5, 1993, plaintiff moved under CPLR 3213 for summary judgment in lieu of complaint against the corporation and the individual defendants, seeking $189,984.31 plus interest. He based his motion on the note, the indemnification agreement and the stock agreement, asserting that the indemnification agreement represented a personal guaranty by the individual defendants of Sinorm’s note.
 

 The corporation did not oppose the motion. Two months after its default on the note, it had been evicted by its landlord in a nonpayment proceeding. The individual defendants, however, cross-moved for summary judgment and submitted the affidavit of Burton Beal, the attorney who represented them in negotiating the various agreements. Apart from challenging the propriety of plaintiff’s motion under CPLR 3213, the attorney contradicted plaintiff’s assertion that the indemnification agreement was intended as a personal guaranty of the note, adding that when plaintiff at closing asked for individual guaranties, the request was adamantly refused. According to Beal, the parties agreed there would be no personal guaranty for the note. Rather, he asserted, the indemnification agreement was intended to protect plaintiff from any personal liability he might incur as a result of his status as a principal
 
 *443
 
 shareholder of the corporation. Plaintiffs reply affidavit denied the factual allegations of the Beal affidavit.
 

 Supreme Court granted plaintiffs motion and denied the cross motion, finding that plaintiff had established a prima facie case by proof of the promissory note, the indemnification agreement, and default in payment and indemnification. In granting summary judgment to the plaintiff, the court held
 

 "the indemnification agreement, the latter portion of which was handwritten, clearly and unambiguously obligates the individual defendants to indemnify the plaintiff for losses he sustained arising from the corporate obligor’s default on the promissory note.”
 

 The Appellate Division affirmed for the reasons stated by Supreme Court.
 

 Before us defendants urge that the indemnification agreement does not qualify as an instrument for the payment of money only, as the agreement covers future, unstated, contingent liabilities to unknown third parties. Further, they contend that the indemnification agreement unambiguously does not constitute a guaranty of the corporation’s promissory note, and consequently their cross motion should have been granted. We consider each in turn.
 

 Summary Judgment in Lieu of Complaint
 

 Introduced more than three decades ago, CPLR 3213 was a procedural reform that, for the limited matters within its embrace, melded pleading and motion practice into one step, allowing a summary judgment motion to be made before issue was joined (compare, CPLR 3212). Its purpose was to provide quick relief on documentary claims so presumptively meritorious that "a formal complaint is superfluous, and even the delay incident upon waiting for an answer and then moving for summary judgment is needless” (1st Prelim Report of Advisory Comm on Practice and Procedure, 1957 NY Legis Doc No. 6 [b], at 91). The statute provides:
 

 "When an action is based upon an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint.”
 

 CPLR 3213 begins with the seemingly straightforward— though stringent — requirement that the action be based on
 
 *444
 
 "an instrument for the payment of money only or a judgment.”
 
 [1]
 
 The prototypical example of an instrument within the ambit of the statute is of course a negotiable instrument for the payment of money — an unconditional promise to pay a sum certain, signed by the maker and due on demand or at a definite time
 
 (see, 4
 
 Weinstein-Korn-Miller, NY Civ Prac ¶ 3213.04, at 253). In fact, the remedy has proved an effective one, particularly for financial institutions recovering on promissory notes and unconditional guaranties
 
 (see,
 
 Cozier, Summary Judgment § 25.4, at 830, in 2 Commercial Litigation in New York State Courts [Haig ed]).
 

 Ironically, however, the threshold requirement has also generated a spate of litigation, leading one commentator to note that there have been "so many invocations of CPLR 3213 over the years in which the result was a dismissal of the application for want of a proper 'instrument’ * * * [so as] to point up the illusory advantages of CPLR 3213 when used so carelessly” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3213:1, at 497).
 

 This Court last spoke to the threshold requirement in
 
 Interman Indus. Prods. v R. S. M. Electron Power
 
 (37 NY2d 151, 154-155), observing that cases within CPLR 3213 "have dealt primarily with some variety of commercial paper in which the party to be charged has formally and explicitly acknowledged an indebtedness.” Where the instrument requires something in addition to defendant’s explicit promise to pay a sum of money, CPLR 3213 is unavailable. Put another way, a document comes within CPLR 3213 "if a prima facie case would be made out by the instrument and a failure to make the payments called for by its terms”
 
 (Interman,
 
 37 NY2d at 155, citing
 
 Seaman-Andwall Corp. v Wright Mach. Corp.,
 
 31 AD2d 136,
 
 affd
 
 29 NY2d 617). The instrument does not qualify if outside proof is needed, other than simple proof of nonpayment or a similar de minimis deviation from the face of the document
 
 (see, e.g., Bank Leumi Trust Co. v Rattet & Liebman,
 
 182 AD2d 541 [readily accessible interest rate]).
 

 Plaintiff’s action falls far short of satisfying the 3213 threshold requirement. There is no written instrument by which the individual shareholders explicitly obligated themselves to make a required payment of a sum certain
 
 (Interman,
 
 
 *445
 
 37 NY2d at 156). The note at issue was signed only by Sinorm; the individual defendants never signed any commercial paper.
 

 Critically here, the indemnification agreement does not qualify as an instrument for the payment of money only. The test "is not what the instrument may be reduced to by part performance or by elision of a portion of it * * * but rather how the instrument read in the first instance”
 
 (Haug v Metal City Findings Corp.,
 
 47 AD2d 837, 838).
 

 The indemnification agreement contains no description of what constitutes the "liabilities and obligations arising from 7/23/91 and thereafter,” and these unknown and unstated obligations cannot be proved from the instrument itself. The agreement also covers unknown future obligations and liabilities that will arise after March 5, 1992. Plaintiff faced contingent personal liabilities as a controlling shareholder of the corporation — for example, legal obligations for unpaid wages and salaries
 
 (see,
 
 Business Corporation Law § 630) and unpaid taxes
 
 (see,
 
 Tax Law § 1133), as well as potential liability from litigation involving the corporation — which were covered by the indemnification agreement. These liabilities and obligations, however, can only be ascertained by resorting to evidence outside the instrument.
 

 Because the indemnification agreement fails to meet the threshold requirement of "an instrument for the payment of money only,” we conclude that CPLR 3213 was improperly invoked.
 

 Defendant’s Cross Motion for Dismissal
 

 If, as in the present case, the plaintiff has mistaken his remedy and CPLR 3213 is in fact not available, the action typically should not be dismissed but simply converted to ordinary form as the statute provides. The statute, however, additionally authorizes the court to do "otherwise.” Thus, if plaintiff’s claim plainly fails on the merits, the court can grant summary judgment for defendant, denying the motion and dismissing the action
 
 (see,
 
 Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3213:11, at 509).
 

 Before us, both sides contend the indemnification agreement is unambiguous and can only be read to require summary judgment in their favor. Relying on the trial court’s decision, plaintiff urges that the document unambiguously obligates the defendants to make him whole as a result of the corporation’s default. Defendants counter that the trial court’s interpreta
 
 *446
 
 tian was contrary to the plain meaning of the contract and eviscerates the distinction between an indemnification and a guaranty.
 

 A contract is of course interpreted so as to effectuate the intention of the parties as expressed in the unequivocal language used. In particular, "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed”
 
 (Hooper Assocs. v AGS Computers,
 
 74 NY2d 487, 492, citing
 
 Levine v Shell Oil Co.,
 
 28 NY2d 205, 211;
 
 Kurek v Port Chester Hous. Auth.,
 
 18 NY2d 450, 456).
 

 Defendants are correct in pointing out the fundamental differences between an indemnification and a guaranty. In an indemnification the entire loss is shifted from the person who has been compelled to pay (the indemnitee) to another upon the imposition of a contingent liability
 
 (see, Bellevue S. Assocs. v HRH Constr. Corp.,
 
 78 NY2d 282, 296,
 
 rearg denied
 
 78 NY2d 1008). An indemnification is thus a primary obligation: if a loss or event occurs within its scope, the indemnitors are primarily liable. A guaranty, by contrast, is a contract of secondary liability
 
 (General Phoenix Corp. v Cabot,
 
 300 NY 87, 95). Thus, a guarantor will be required to make payment only when the primary obligor has first defaulted.
 

 Plainly, the agreement here was one of indemnification not guaranty. The agreement was labeled an indemnification by the parties, and it employs the language commonly used in contracts of indemnification
 
 (see, e.g., Hooper,
 
 74 NY2d at 492). The document "indemnifies” and "holds harmless” plaintiff, his heirs, successors, and assigns "from and against all costs, losses, claims, taxes, liabilities, fines, penalties, damages and expenses * * * incurred by any of them.” This language obligates the individual defendants to pay
 
 on plaintiff’s behalf
 
 — to make him whole — if plaintiff incurs certain liabilities.
 

 The agreement explicitly holds plaintiff harmless for his own liabilities and obligations, not for those of the corporation. Thus, if plaintiff incurred an obligation arising out of a breach of the stock agreement, he would be protected against that loss not only by the corporation but also by the individual defendants. The additional phrase "as well as all obligations and liabilities accruing from [July 23, 1991] and thereafter” — still within the indemnification agreement — enlarges the protection
 
 *447
 
 to include liabilities that might accrue beyond the terms of the stock agreement. It does not alter the unambiguous language that it is
 
 plaintiff’s
 
 obligations that are indemnified against, not the corporation’s. Without question, the $200,000 note is an obligation of the corporation, not a liability or obligation of plaintiff.
 

 Plaintiff’s proffered interpretation of the agreement seeks to make the individual defendants guarantors of the corporation’s note. A promise to assume an obligation in an indemnity, however, should not be found unless it can be clearly implied from the language and purpose of the entire agreement
 
 (see, Hooper,
 
 74 NY2d at 492). This is consistent with the familiar proposition that when parties set down their agreement in a clear, complete document, evidence outside the four corners of the document as to what was actually intended is generally inadmissible
 
 (see, W.W.W. Assocs. v Giancontieri,
 
 77 NY2d 157, 162).
 

 Here, despite plaintiff’s urging, the contract indicates a contrary intention. The agreement speaks only of plaintiff’s liabilities and obligations, contains no language of guaranty, and nowhere mentions the note. Under plaintiff’s reading, Si-norm as cosignatory to the indemnification agreement would be guaranteeing its own obligation — a construction that would render a portion of the agreement meaningless.
 

 The stock agreement, which is incorporated by reference in the indemnification agreement, further manifests that the individual defendants did not guaranty the corporation’s note.
 
 [2]
 
 Plaintiff already had security for the promissory note as set forth in the stock agreement — in fact, an entire article of the stock agreement was devoted to plaintiff’s security for the note. Plaintiff was granted a purchase-money first security interest in Sinorm’s assets, an assignment of Sinorm’s lease and a sublease between plaintiff as sublandlord and the corporation as subtenant. The article says nothing about any type of guaranty for the note; nor does the article concerning default make mention of any guaranty of the note. Indeed, the stock agreement nowhere provides that the individual defendants will pay if the corporation defaults on the note.
 

 
 *448
 
 In addition, the indemnification’s reference to potential "costs, losses, claims, taxes” as well as "liabilities and obligations” comports with plaintiff’s potential personal liability for corporate obligations, such as possible outstanding guaranties, unpaid taxes
 
 (see,
 
 Tax Law § 1133), unpaid wages or salaries owed to laborers and employees
 
 (see,
 
 Business Corporation Law § 630), as well as potential personal liability resulting from litigation involving the corporation and its shareholders.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiff’s motion pursuant to CPLR 3213 for summary judgment in lieu of complaint denied and the individual defendants’ cross motion for summary judgment granted.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.
 

 [1]
 

 . Proposals for legislative reform would broaden the statute’s coverage to include several categories of common commercial transactions (see, 1996 NY Senate-Assembly Bill S 6775, A 9188).
 

 [2]
 

 . Defendants offer an additional factual explanation for the indemnification agreement: that plaintiff ceased having any active role in Sinorm’s affairs after July 23, 1991, yet technically remained a shareholder until the closing on March 5, 1992 and for that reason sought the indemnification in part to protect himself from liabilities incurred "from 7/23/91 and thereafter.”