■ DIVERSIFIED INVESTORS CORP., Appellant, v DIVERSIFAX, INC., et al., Respondents. [657 NYS2d 642] —Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered September 30, 1996, which denied plaintiff's motion for summary judgment in lieu of complaint, as well as defendants' cross motions for dismissal of the action, unanimously modified, on the law, plaintiff's motion is granted directing the entry of judgment against defendant DiversiFax ("Fax") in the sum of $228,570, with interest and costs, the balance of the claim for recovery of attorneys' fees and costs is severed and remanded for assessment in further proceedings, and otherwise affirmed. The Clerk is directed to enter judgment accordingly.

In November 1993, plaintiff was among the majority stockholders of Fax. That month, Fax and several companies owned by an outside investor merged, resulting in a complete shift of stockholder control of Fax. This same transaction also resulted in acknowledgment by Fax of a $228,000 indebtedness to plaintiff and three other creditors. Plaintiff is now the assignee of two of the other creditors; the remaining creditor, Rothman, is an added party defendant in this action.

About a year later, these parties and others formalized their post-merger obligations in a formal written "Termination Agreement" on October 14, 1994. Paragraph 4 of that agreement fixed the terms of Fax's payment of the debt. In satisfaction thereof, the creditors agreed to accept their proportionate share of the (new) Fax common stock, which Fax was to register with the Securities and Exchange Commission (SEC) by the "Issuance Date" of October 13, 1995. The number of shares transferrable in each case was to be computed by reference to the closing bid price of Fax stock on the issuance date.

Paragraph 4 of the agreement further provided that "[i]f, for any reason, the DiversiFax Debt Shares shall not be registered by the Issuance Date, the DiversiFax Debt shall be automatically reinstated and shall be immediately due and payable on the Issuance Date". It is conceded that Fax did not register the shares with the SEC by the issuance date.

In our view, this unambiguous language is dispositive of the issue on appeal, as a matter of law. In denying summary judgment, the motion court found a triable issue in the fact that the creditors never presented Fax with an agreed-upon separate distribution to each. Nowhere does the agreement impose such a duty, nor did such failure constitute the kind of frustration by a contracting party sufficient to exonerate performance by the other (*see, Kooleraire Serv. & Installation Corp. v Board of Educ.*, 28 NY2d 101, 106). Fax could have complied with the terms of the agreement by registering the shares in the name of a trustee, for the collective benefit of the creditors, with the precise number of shares due each creditor to be determined at a later date. This could have been effected through the registration of a "delayed" offering pursuant to SEC Rule 415—the "shelf registration" rule (17 CFR 230.415). Rule 415 allows issuers of securities to prepare an offering and await a propitious moment to finalize it, in light of fluctuating market rates (*see,* 1 Hazen, Law of Securities Regulation § 3.8 [Practicioner's 3d ed]). Since the number of shares was to be determined by dividing the debt by the closing bid price of the common stock on the issuance date, the precise number to be issued in satis-

faction of the debt could not be determined until that date. Nevertheless, Fax could have registered a sufficient number of shares, pursuant to Rule 415, to protect against a downward fluctuation of the stock price.

Defendants do not indicate why a trustee could not have been utilized, and indeed, the main thrust of their argument appears to be their speculation that plaintiff would have invented some excuse to declare that procedure a violation of the contract's terms. Similarly, defendants do not point to any authority to support their position that the "shelf registration" rule is only available for transactions that do not exist at the time of registration. Rule 415 certainly does not indicate any such limitation (*see generally*, Gordon and Kornhauser, *Efficient Markets, Costly Information, and Securities Research*, 60 NYU L Rev 761, 818ff [1985]).

Finally, this action was appropriate for accelerated judgment. An action comes within the ambit of CPLR 3213 if a prima facie case for nonpayment of a debt can be made out by the terms of the debt instrument itself; the only permissible extrinsic evidence would be "simple proof of nonpayment or a similar de minimis deviation from the face of the document" (*Weissman v Sinorm Deli*, 88 NY2d 437, 444). By its own terms, the agreement provided that the debt would be automatically reinstated and unconditionally due on October 13, 1995, upon the failure of Fax to register the shares; it thus became an instrument for the payment of money only (*see, Gregorio v Gregorio*, 234 AD2d 512; *East N. Y. Sav. Bank v Baccaray*, 214 AD2d 601, 602). Concur—Milonas, J. P., Ellerin, Wallach and Nardelli, JJ.