# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

**674**

**CA 11-00279**

PRESENT: SMITH, J.P., PERADOTTO, CARNI, SCONIERS, AND MARTOCHE, JJ.

---

IN THE MATTER OF THE ESTATE OF ALDONA K.
MARRIOTT, DECEASED.

-----------------------------------------

GAIL MARRIOTT, PETITIONER-APPELLANT;

ROBERT W. MARRIOTT, RESPONDENT-RESPONDENT.

MEMORANDUM AND ORDER

---

MCMAHON AND GROW, ROME (DAVID C. GROW OF COUNSEL), FOR
PETITIONER-APPELLANT.

PETER M. HOBAICA, LLC, UTICA (GEORGE E. CURTIS OF COUNSEL), FOR
RESPONDENT-RESPONDENT.

---

Appeal from an order of the Surrogate's Court, Oneida County
(Louis P. Gigliotti, S.), entered June 8, 2010. The order denied
petitioner's motion for summary judgment.

It is hereby ORDERED that the order so appealed from is
unanimously reversed on the law without costs and the motion is
granted in accordance with the following Memorandum: Petitioner
commenced this proceeding pursuant to SCPA 2103 seeking discovery and
delivery of certain assets that allegedly belonged to the estate of
Aldona K. Marriott (decedent). We agree with petitioner that
Surrogate's Court erred in denying her motion for summary judgment
seeking, inter alia, an order directing that the net proceeds from the
sale of decedent's residence (hereafter, property) be released to her
estate.

While decedent was in the hospital, she executed a durable
general power of attorney using the statutory short form (hereafter,
POA form), which purported to grant certain powers to decedent's sons,
Thomas Marriott and Robert W. Marriott (respondent), and respondent's
wife. Decedent formally revoked the power of attorney approximately
two months later, shortly after Thomas Marriott conveyed the property
to himself and respondent for consideration of $1. After the
commencement of this proceeding, Thomas Marriott conveyed his
purported one-half share of the property back to the estate for no
consideration. Thereafter, the estate and respondent sold the
property to a third party for $135,000. This proceeding concerns
respondent's purported share of the net proceeds from the sale, which
is presently in escrow pending resolution of the proceeding.

We conclude that petitioner met her burden of establishing that
the property belonged to decedent at the time of her death (*see Matter*

*of Murray*, 84 AD3d 106; *see generally Zuckerman v City of New York*, 49 NY2d 557, 562), and that respondent failed to raise a triable issue of fact in opposition (*see Matter of Coviello*, 78 AD3d 696, 697-698; *see generally Zuckerman*, 49 NY2d at 562).  The purported conveyance of the property by Thomas Marriott to himself and respondent was unauthorized inasmuch as it was made pursuant to a POA form that did not validly grant Thomas Marriott such authority (*see* General Obligations Law former § 5-1501 [1]).  The statute in effect at the time the POA form was executed and the directions on the POA form explicitly require the principal, i.e., decedent, to place her "initials" in designated spaces on the form to indicate her "choice[s]" with respect to the specific powers granted to her agents (*id.*).  "[I]f the [designated] space[s are] not initialed, no authority is granted" (*Matter of Hoerter*, 15 Misc 3d 1101[A], 2007 NY Slip Op 50448[U], *6).  Specifically, the POA form directs the principal to "**[i]nitial in the blank space to the left of [his or her] choice any one or more of the following lettered subdivisions as to which [he or she] WANT[S] to give [his or her] agent[s] authority.  If the blank space to the left of any particular lettered subdivisions is NOT initialed, NO AUTHORITY WILL BE GRANTED for matters that are included in that subdivision.  Alternatively, the letter corresponding to each power [he or she] wish[es] to grant may be written or typed on the blank line in subdivision '(Q),' and [he or she] may then put [his or her] initials in the blank space to the left of subdivision '(Q)' in order to grant each of the powers so indicated**" (*see* former § 5-1501 [1]).

Here, the POA form executed by decedent contains an "X" next to subdivision "(Q)," which grants all of the listed powers to the agents, including the power to conduct real estate transactions.  The decedent's initials, however, do not appear to the left of any of the specific powers or the catchall subdivision "(Q)," nor do they appear anywhere else on the POA form.  Although an "X" or another such mark may be sufficient where a principal routinely signs his or her name with such a mark, i.e., where the principal lacks the capacity for a standard signature (*see generally* General Construction Law § 46; *Hoerter*, 2007 NY Slip Op 50448[U], *6), that is not the case here.  Indeed, decedent signed her full name on the POA form, thus rebutting any suggestion that she was unable to affix her initials to the form or that it was her practice to execute documents with an "X" (*see generally* § 46).  Inasmuch as "the blank space to the left of . . . subdivision ['(Q)'] is NOT initialed, NO AUTHORITY [WAS] GRANTED" to decedent's sons to convey or to otherwise dispose of her property (General Obligations Law former § 5-1501 [1]; *see Matter of Ungar v Feller*, 24 Misc 3d 1222[A], 2009 NY Slip Op 51554[U], *4).  Thus, based on the record before us, we conclude that the purported conveyance of the property pursuant to the power of attorney is void (*see Matter of White*, 11 Misc 3d 1054[A], 2006 NY Slip Op 50210[U], *4-5), and the proceeds from the sale thereof constitute property of decedent's estate.

We therefore reverse the order, grant the motion and direct that respondent's purported share of the net proceeds from the sale of the

subject property be released to the estate.