OPINION OF THE COURT
Stephen A. Bucaria, J.
Motion pursuant to CPLR 3213 by plaintiff Lawrence S. Lawrence for summary judgment in lieu of complaint is denied.
Motion pursuant to CPLR 3211 (a) (1), (2), (3) and (7) by co-defendant Michael F. Kennedy for an order dismissing the complaint insofar as interposed against him is granted.
Motion pursuant to CPLR 3211 (a) (1), (2), (3) and (7) by co-defendant Lawrence and Walsh, EC. for an order dismissing the complaint insofar as interposed against it is granted in part and denied in part.
Commencing in 1972, the now 70-year-old plaintiff, Lawrence S. Lawrence, served as a founding partner and/or member of the defendant law firm, Lawrence and Walsh, EC. (the Firm). In 2008, however, the plaintiff and the Firm jointly agreed that the plaintiff would relinquish his status as a Firm member and/or principal. It was also agreed, however, that the plaintiff would retain his association therein by serving as an employee, in an “of counsel” capacity (complaint 1111 1-2, 4-5; S. Lawrence aff 1111 4-5; Kennedy aff 1Í 7).
In early January of 2008, and after extensive negotiations (Kennedy aff 1Í 7), the parties executed two, related agreements which memorialized the plaintiff’s transition from Firm *714 principal/stockholder to employee; namely, a “Stock and Related Asset Purchase Agreement,” and an employment contract (see Bierman aff, exhibits B, C). In general, and pursuant to the key terms of the agreements, the plaintiff conveyed to the Firm, his 50% capital stock membership interest therein and the Firm then offered him employment spanning a 4V2-year term, scheduled to terminate in June of 2012 (agreement § 1 [a], [b]-[c]; § 3; complaint HIT 1-3, 6-7). Among other things, the parties’ employment agreement provides that the plaintiff was to assume the “responsibilities, duties and authority” customarily associated with his “of counsel” position, and that he was to devote “substantially all of his business time, attention, expertise and efforts to the business and affairs of the Firm in the same manner as past practices” (agreement § 1 [c], [d]).
With respect to compensation, the Firm agreed to pay the plaintiff an aggregate sum of $418,300 in fixed salary over the entirety of the contract term, to be paid in biweekly installments of $4,058.04. The plaintiff was also entitled to additional, performance-based salary amounts calculated in accord with a prescribed formula set forth in the agreement (agreement § 2 HI [c]; complaint HH 8-9, 13-15). Significantly, the agreement further provides that “for purposes of enforcement this [employment] Agreement and specifically section 2[b], shall be deemed an instrument for the payment of money, provided, however, that this provision shall not constitute a waiver of any defenses or counterclaims the Firm may have to enforcement of this provision” (agreement § 2 H 1 [c] at 5).
The agreement authorizes the Firm to terminate the plaintiff “for cause” in the event of the plaintiffs “willful misconduct, breach of fiduciary duty or material negligence, or a material breach of the agreement and/or conviction of any crime resulting in disbarment or suspension from the practice of law” (agreement § 3 [a] [iii]). Additionally, the Firm could terminate the plaintiffs employment upon, inter alia, his death or disability for 90 days, in which case the Firm was to be responsible for accrued, performance-based salary earned up the date of termination, and fixed salary amounts “for the remainder of the Term.” (Agreement § 3 [a], [i]-[v]; § 4 [a] at 10-12; see also agreement § 8 at 16.) With respect to defaults, the agreement states that in the event of a Firm default in paying fixed salary which remains uncured for a period exceeding 30 days, then the entire unpaid, fixed salary amount would — at the plaintiffs option — become immediately due and owing (agreement § 2 [b] at 4).
*715 Notably, section 19 of the agreement states in part that the plaintiff “irrevocably waives” any right to enforce the agreement against any individual member of the Firm, and that he similarly agreed to “look solely to the Firm for the enforcement of the liability and obligations contained in this agreement” (agreement § 19 at 21-22; see also Stock and Related Asset Purchase Agreement § 11).
In September of 2010, plaintiff took a leave of absence to undergo heart surgery, but suffered a stroke shortly after the surgery was performed. The stroke left plaintiff neurologically unable to perform his employment duties (S. Lawrence aff 1i 2; complaint lili 2, 16). According to the Firm’s managing member — codefendant Michael F. Kennedy — plaintiff's daughter then came to the Firm’s offices and informed Kennedy that the plaintiff would not be “returning to the practice” (Kennedy aff 1IH 12-13).
After plaintiff’s daughter inquired of Kennedy about the Firm’s obligations under the employment agreement, Kennedy responded by telling her that the Firm had “some real concerns and issues with respect to . . . [the plaintiff’s] conduct,” which Kennedy claims he intended to discuss with the plaintiff upon his recovery. These concerns and issues were allegedly founded on “significant and serious claims” which the Firm had against the plaintiff — in sums purportedly exceeding any salary amounts the Firm might owe the plaintiff under the 2008 employment agreement (Kennedy aff 1Í1Í12-13).
With respect to those salary amounts, plaintiff claims that payments allegedly due from February of 2010 were already then outstanding and unpaid (complaint lili 8-10 n 1 at 5). According to the plaintiff, the Firm terminated him in early January of 2011, and then failed to pay any further salary — fixed or otherwise — under the agreement (complaint U 17).
Thereafter, the plaintiff served a notice of default (complaint IT 21), and when the payments allegedly due were still not forthcoming, he commenced the within action as against the Firm and Michael F. Kennedy, individually. The verified complaint, dated May 25, 2011, sets forth the facts as generally summarized above and interposes three, separately captioned causes of action. The first two causes of action allege in substance that the Firm and Kennedy willfully and with “gross negligence” disregarded and breached their contractual duties to pay both fixed and performance-based salary amounts (complaint 1Í1Í 20, 22-27, 28-33).
*716 The third cause of action alleges, inter alia, that a fiduciary and/or “special” relationship existed between the plaintiff and the defendants and that the plaintiff is entitled to an accounting since Kennedy and the Firm have diverted the Firm’s assets and receipts for their own personal use (complaint 1i1f 2-3, 6, 10). The complaint further avers that in order to avoid the waste of assets which would render a judgment ineffectual, the defendants should be restrained and enjoined from further dissipating the Firm’s assets. Moreover, based on the above, the plaintiff seeks an accounting relating to “all sums” received by the defendants and spent “by them for travel . . . entertainment, referral fees and other perks and benefits” (complaint 1i1i 3, 9-10, 23-24, 34-35).
Notably, the record contains a short form, durable power of attorney which plaintiff executed in November of 2010 and which, inter alia, designates Sherry Lawrence, the plaintiff’s wife, as his agent and attorney in fact (S. Lawrence aff, exhibit A; see also S. Lawrence reply aff 1Í1Í 3-4; see generally General Obligations Law § 5-1501 et seq.; Matter of Ferrara, 7 NY3d 244, 251 [2006]).
Contemporaneously with the service of the above-described verified complaint, plaintiff separately moved pursuant to CPLR 3213, for summary judgment in lieu of complaint with respect to the “fixed” salary portion of the employment agreement. In so doing, the plaintiff relies in part on section 2 (b) of the employment agreement, which provides that “for purposes of enforcement this Agreement and specifically section 2[b], shall be deemed an instrument for the payment of money” (see also complaint 1Í1Í11-12).
Defendants Michael F. Kennedy and the Firm have opposed the plaintiffs application pursuant to CPLR 3213 and separately cross-moved — pre-answer — for dismissal of the plaintiffs verified complaint pursuant to CPLR 3211 (a) (1), (2), (3) and (7).
Among other things, the movants contend that: (1) the power of attorney relied on by Sherry Lawrence is defective, and the plaintiff otherwise lacks capacity to commence and maintain the action; (2) section 19 of the employment agreement precludes enforcement of the contract against individual firm members, including managing member, Michael F. Kennedy; (3) there exists no fiduciary relationship between the defendants and the plaintiff and thus no accounting is warranted; and (4) the employment contract does not constitute an instrument for the “payment of money only” within the meaning of CPLR *717 3213 and, in any event, the Firm possesses a fraudulent inducement defense which warrants dismissal of the complaint as a matter of law.
Upon the papers submitted, the defendants’ cross motions are granted to the extent indicated below. The motion for summary judgment in lieu of complaint is denied.
Although the plaintiff suffered a serious stroke in September of 2010, at this early “CPLR 3211 motion stage” of proceeding (Held v Kaufman, 91 NY2d 425, 433 [1998]), there is lacking probative evidence from which it can be determinatively concluded that the plaintiff otherwise lacks capacity and competence in his own right to commence and maintain the subject action. “As general rule, a party’s competence to enter into a binding contract is presumed” (Horrell v Horrell, 73 AD3d 979, 980 [2010]; Preshaz v Przyziazniuk, 51 AD3d 752 [2008]). Further, the burden of proving incompetence is on the party asserting it (Horrell v Horrell, supra). Relatedly, “[i]n the absence of a judicial declaration of incompetence made in accordance with the statutory processes provided therefor, a person suffering from acknowledged mental defects may sue or be sued in his or her own name” (Mitsinicos v New Rochelle Nursing Home, 258 AD2d 630, 631 [1999]; Bryant v Riddle, 259 AD2d 399 [1999]; see generally Sengstack v Sengstack, 4 NY2d 502 [1958]).
As there is no medical evidence before the court at this juncture (cf. Jordan v Clinton, 18 AD3d 817, 818 [2005]; Matter of Rose S., 293 AD2d 619, 620 [2002]), the movants’ reliance upon allegations in the complaint (Sengstack v Sengstack, 4 NY2d at 509-510), and/or inconclusive statements made by opposing counsel, do not establish that plaintiff is lacking in mental capacity and competence as a matter of law (e.g. Dilimetin aff ITU 9-10; Kennedy aff 1i 10).
In light of the foregoing, the movants’ additional assertions with respect to the viability of the November 10, 2010 power of attorney do not establish their entitlement to dismissal of the complaint predicated upon the plaintiff’s alleged lack of capacity (see generally Matter of Marriott, 86 AD3d 943; US Bank N.A. v Gestetner, 74 AD3d 1538 [2010]).
Turning to the movants’ additional assertions, that branch of Michael F. Kennedy’s cross motion which is to dismiss the complaint insofar as interposed against him should be granted (CPLR 3211 [a] [1]).
It is undisputed that Kennedy did not execute the employment agreement in his individual capacity and therefore was *718 not a party to the contract sued upon by the plaintiff. Notably, “[1] lability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties” (Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp., 64 AD3d 85, 104 [2009]).
Moreover, paragraph 19 of the agreement is plain in its import and meaning with respect to the plaintiffs ability to enforce the agreement against individual, nonsignatories and/or members of the Firm and its employees. In fact, it refers to Michael Kennedy as the “managing member” of the Firm. Specifically, paragraph 19, entitled “exculpation,” states in part that
“the liability and obligation to perform . . . this Agreement shall not be enforced . . . against the Managing Member of the Firm or against any present or future partner, future [sic] or member, officer [or] employee . . . [and the plaintiff] irrevocably waives any and all right to sue the foregoing on any legal or equitable grounds whatsoever and agrees to look solely to the Firm for the enforcement ... of this Agreement” (agreement at 22 [emphasis added]).
It is settled that when “sophisticated, counseled business people” “ ‘set down their [contract] in a clear, complete document, their writing should ... be enforced according to its terms’ ” (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004], quoting W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]; see Brad H. v City of New York, 17 NY3d 180, 185 [2011]; Consedine v Portville Cent. School Dist., 12 NY3d 286, 293 [2009]).
At bar, the plaintiff is a sophisticated businessman and the founder of a law firm who voluntarily executed the agreement and assented to its various terms. It is settled that “parties are free to make their contracts” (Kaygreen Realty Co. v Goldman, 231 AD2d 682, 684 [1996]), and that where, as here, the disputed agreement was negotiated by sophisticated and well-counseled parties, courts will not “by construction add or excise terms ... [so as to] make a new contract for the parties under the guise of interpreting the writing” (Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001] [internal quotation marks omitted]; see Vermont Teddy Bear Co. v 538 Madison Realty Co., supra, 1 NY3d 470, 475 [2004]; see also George Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 218-219 [1978]). Further buttressing the assertion that the parties *719 plainly intended to exclude liability as against individual Firm members is the presence of a similar clause in the contemporaneously executed Stock and Related Asset Purchase Agreement (see Stock and Related Asset Purchase Agreement II11).
Contrary to plaintiff’s contentions, there is no overriding public policy, special relationship, or statutory prohibition which would bar sophisticated attorneys from agreeing that Kennedy — as a nonparty — would not be subject to personal liability under the agreement. It is settled that “[a] clear contractual provision limiting damages is enforceable absent a special relationship between the parties, a statutory prohibition, or an overriding public policy” (Mancuso v Rubin, 52 AD3d 580, 582-583 [2008]; Colnaghi, U.S.A. v Jewelers Protection Servs., 81 NY2d 821, 823-824 [1993]; Sommer v Federal Signal Corp., 79 NY2d 540, 553-554 [1992]; see Finsel v Wachala, 79 AD3d 1402, 1404 [2010]).
“Moreover, while a party may not limit its liability for damages caused by its own. grossly negligent conduct” (Schietinger v Tauscher Cronacher Professional Engrs., P.C., 40 AD3d 954, 955-956 [2007]; Sommer v Federal Signal Corp., 79 NY2d at 554), “[g]ross negligence, when.invoked to pierce an agreed-upon limitation of liability in a commercial contract, must ‘ smack[ ] of intentional wrongdoing’ ” (Sommer v Federal Signal Corp. at 554, quoting Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, ,385 [1983]; see Colnaghi, U.S.A. v Jewelers Protection Servs., 81 NY2d 821, 823-824 [1993], supra; Schwartz v Martin, 82 AD3d 1201, 1203 [2011]).
The claims interposed do not rise to the foregoing level of intensity (Schwartz v Martin, 82 AD3d at 1203). Nor has it been shown that there was overreaching or duress-inducing misconduct perpetrated by the Firm in connection with the negotiation of the subject exculpatory clause (Finsel v Wachala, 79 AD3d 1402, 1404 [2010], supra). Indeed, if anything, the factual record developed at this juncture suggests that the plaintiff’s claims — while framed in tort-based allegations of “willful” and “grossly negligent” conduct — are contractual in nature and arise from a breach of the parties’ employment agreement (see generally Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389-390 [1987]; RNK Capital LLC v Natsource LLC, 76 AD3d 840, 841 [2010]).
Lastly, it bears noting that this is not a situation where the party which actually contracted with the plaintiff — the Firm, as employer — has attempted to shield itself from liability through *720 use of an exculpatory clause; rather, the involved clause precludes plaintiff from suing Michael F. Kennedy — an individual who was never a party to the underlying contract in the first place.
The defendants’ cross motions for dismissal of the third “accounting” cause of action to the extent based on the existence of an alleged fiduciary duty, should also be granted.
It is settled that “ ‘[a] fiduciary relationship “exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation” ’ ” (People v Coventry First LLC, 13 NY3d 108, 115 [2009], quoting EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). Such a relationship “exists only when a person reposes a high level of confidence and reliance in another, who thereby exercises control and dominance over him” (People v Coventry First LLC, 13 NY3d at 115; Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158, 172-173 [1993]).
Where parties have entered into a contract, courts look to that agreement “to discover . . . the nexus of [the parties’] relationship and the particular contractual expression establishing the parties’ interdependency,” but “[i]f the parties ... do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them” (Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158, 161-162 [1993]; see EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d at 19). Ultimately and “[i]n order to succeed on a cause of action to recover damages for breach of fiduciary duty, a plaintiff must do more than make allegations of unscrupulous acts” and conclusory averments will not suffice (see Robert I. Gluck, M.D., LLC v Kenneth M. Kamler, M.D., LLC, 74 AD3d 1167, 1167 [2010]; Kopelowitz & Co., Inc. v Mann, 83 AD3d 793, 799 [2011]; see Greenberg v Joffee, 34 AD3d 426, 427 [2006]). “ ‘The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest’ ” (Adam v Cutner & Rathkopf, 238 AD2d 234, 242 [1997], quoting Palazzo v Palazzo, 121 AD2d 261, 265 [1986]; see also Bradkin v Leverton, 26 NY2d 192, 199 n 4 [1970]).
Moreover, an accounting is generally unavailable when the parties have only an employee-employer relationship (Vitale v Steinberg, 307 AD2d 107, 108 [2003]; Michnick v Parkell Prods., *721 215 AD2d 462, 462-463 [1995]; Reichert v MacFarland Bldrs., 85 AD2d 767, 768 [1981]). “A cause of action alleging an account stated cannot be utilized simply as another means to attempt to collect under a disputed contract” (Simplex Grinnell v Ultimate Realty, LLC, 38 AD3d 600 [2007], supra; see Ross v Sherman, 57 AD3d 758, 759 [2008]).
Even upon favorably construing the allegations contained in the complaint, the court agrees that the plaintiff has failed to plead or otherwise set forth facts demonstrating that the arms-length, employer-employee relationship at issue here gave rise to a fiduciary between the parties (see e.g. Sebastian Holdings, Inc. v Deutsche Bank AG., 78 AD3d 446, 447 [2010]; Schenkman v New York Coll. of Health Professionals, 29 AD3d 671 [2006]; WIT Holding Corp. v Klein, 282 AD2d 527, 529 [2001]; see also Rather v CBS Corp., 68 AD3d 49, 55-56 [2009]).
Although the complaint conclusively claims that a special relationship between the parties arose by virtue of the plaintiffs former status as founding partner and the sale of his stock to the Firm (e.g. complaint IfH 6-7), neither of the parties’ two agreements establishes the existence of a postagreement fiduciary or “agency” relationship (RNK Capital LLC v Natsource LLC, 76 AD3d 840, 841 [2010], supra; cf. LoGerfo v Trustees of Columbia Univ. in City of N.Y., 35 AD3d 395 [2006]). Rather, a review of the employment contract confirms that after plaintiff conveyed his stock to the Firm, the Firm’s obligation to pay him thereafter was contractual and commercial — not fiduciary or confidential in nature (RNK Capital LLC v Natsource LLC, 76 AD3d at 841), i.e., the agreement does not reflect that plaintiff reposed a particularly “high level of confidence and reliance in [the Firm, which] thereby exercise[d] control and dominance over him” uniquely (People v Coventry First LLC, 13 NY3d at 115). Similarly, there is nothing in the subsequent employment relationship which supports the existence of a heightened duty of care or any sort of confidential relationship with respect to the discharge of the Firm’s payment duties and obligations (RNK Capital LLC v Natsource LLC, supra).
With respect to plaintiffs CPLR 3213 motion, the Firm asserts, inter alia, that the parties’ agreement with respect to fixed income is not one for the payment of money only. The court agrees.
“Pursuant to CPLR 3213, a party may bring a motion in lieu of complaint when the action is ‘based upon an instrument for the payment of money only or upon any judgment’ ” (Bloom v *722 Lugli, 81 AD3d 579, 580 [2011]; see Weissman v Sinorm Deli, 88 NY2d 437, 444 [1996]; Interman Indus. Prods. v R. S. M. Electron Power, 37 NY2d 151, 155 [1975]). “If an instrument contains an unconditional promise to pay a sum certain over a stated period of time, it is considered an instrument for the payment of money only” (Bloom v Lugli, 81 AD3d at 580).
However, “[t]he instrument does not qualify if outside proof is needed, other than simple proof of nonpayment or a similar de minimis deviation from the face of the document” (Weissman v Sinorm Deli, 88 NY2d at 444; Ro & Ke, Inc. v Stevens, 61 AD3d 953 [2009]; Stallone v Rostek, 27 AD3d 449 [2006]). It has been observed that “disputes which involve only the nonpayment of money due under an arguably discrete and separable provision to a contract, may not satisfy CPLR § 3213, since the Section was intended as a limited procedure for commercial paper, promissory notes, and similar instruments” (Persichilli v Metropolitan Paper Recycling Inc., 30 Misc 3d 1227[A], 2010 NY Slip Op 52381[U], *3 [Sup Ct, Nassau County 2010]; see also Interman Indus. Prods. v R. S. M. Electron Power, supra).
With these principles in mind, the court agrees that the portion of the agreement relating to fixed salary does not qualify as an instrument for the payment of money “only.” Rather, the underlying “instrument” is an employment contract — one which contains a variety of interrelated provisions governing the parties’ respective rights, duties and obligations (Rickert v Packet Facilities, 35 AD2d 711 [1970]); it is not a promissory note, a species of commercial paper, or an unconditional guarantee (Weissman v Sinorm Deli, 88 NY2d at 444;. Interman Indus. Prods. v R. S. M. Electron Power, supra; Rickert v Packet Facilities, supra).
Further, the fixed salary provision comprises only one component of an integrated employment agreement which expressly preserves any defenses and counterclaims the Firm may possess as against plaintiff with regard to annual salary cf. SCP [Bermuda] v Bermudatel Ltd., 224 AD2d 214, 215 [1996]). While plaintiff argues that the fixed salary amounts are now unconditionally payable — and that the Firm at this particular juncture has no defenses — “[t]he test ‘is not what the instrument may be reduced to by part performance or by elision of a portion of it . . . but rather how the instrument read in the first instance’ ” (Weissman v Sinorm Deli, 88 NY2d at 445, quoting Haug v Metal City Findings Corp., 47 AD2d 837, 838 [1975]; see Hellenic Lines v Crown Cork & Seal Co., 70 AD2d *723 567, 568 [1979]). The plaintiffs reliance on the holding in SCP (Bermuda) v Bermudatel Ltd. (224 AD2d 214 [1996], supra) is misplaced, inasmuch as the instruments in question there were not employment agreements, but rather promissory notes and/or unconditional guarantees — in respect to which, inter alia, the defendants therein waived all claims and defenses (SCP [Bermuda] v Bermudatel Ltd. at 215).
However, those branches of the Firm’s cross motion which are to dismiss the first and second, contract-based causes of action pursuant to CPLR 3211 should be denied.
Although defendants claim that plaintiff fraudulently induced them to enter into the employment agreement, these assertions, at best, raise issues of fact which cannot be resolved as a matter of law on the prediscovery record before the court (cf. CPLR 3212 [f]; Silver v Silver, 63 AD3d 903 [2009]). Moreover, upon crediting the allegations contained in the complaint, the court agrees that the first and second causes of action sufficiently plead viable causes of action (see generally Leon v Martinez, 84 NY2d 83, 87-88 [1994]). The court notes that the complaint alleges, inter alia, that the Firm has failed to pay him sums due and owing under the performance-based salary provisions of the agreement — allegations which are not susceptible to summary resolution on a pre-answer motion to dismiss (complaint 1Í1Í13-14).
Additionally, both defendants claim that plaintiffs counsel may have to be disqualified if his counsel is deemed to be a potential advocate-witness (see CPLR 2215; see also Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.7; Dilimetin aff 1i 15; Bierman reply aff UH 21-22). Neither moving defendant has made reference to the disqualification of counsel as a species of relief sought in their respective notices of cross motion (CPLR 2215; see generally Blam v Netcher, 17 AD3d 495, 496 [2005]). In any event, the defendants have not carried their “heavy burden” on a motion to disqualify an opposing counsel (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437 [1987]; Campbell v McKeon, 75 AD3d 479, 480 [2010]; see Spinner v County of Nassau, 82 AD3d 870, 871 [2011]). Moreover, “[a]t this early ‘stage of the proceedings, where discovery has not yet been had, disqualification’ ” would be premature (Spinner v County of Nassau, 82 AD3d at 871; Kirshon, Shron, Cornell & Teitelbaum v Savarese, 182 AD2d 911, 912 [1992]).
Finally, the court notes that defendants’ contentions with respect to plaintiffs failure to serve a summons with his complaint *724 have been initially raised in perfunctory and/or obscure fashion primarily in a single footnote (cf. Kennedy opposition brief at 4-5 n 2; Bierman aff 1Í 8 n 1; see Tolbert v Queens Coll., 242 F3d 58, 75 [2d Cir 2001]), and developed and advanced as an affirmative dismissal ground only for the first time in reply (Bier-man reply aff 1i 3; Dilimetin reply aff 1Í1Í 3-5) (see Matter of Allstate Ins. Co. v Dawkins, 52 AD3d 826, 827 [2008]; Matter of Harleysville Ins. Co. v Rosario, 17 AD3d 677 [2005]).
The court has considered the parties’ remaining contentions and concludes that they do not support the granting of relief in excess of that awarded above.
Accordingly, it is, ordered, the motion by the plaintiff pursuant to CPLR 3213 is denied, and it is further, ordered that the cross motion by the defendant Michael F. Kennedy for an order dismissing the complaint insofar as interposed against him is granted, and it is further, ordered that the cross motion by the defendant Lawrence and Walsh, EC. for an order dismissing the complaint insofar as interposed against it is granted with respect to the third cause of action to the extent indicated herein, and the cross motion is otherwise denied.