OPINION OF THE COURT
Carol Robinson Edmead, J.
Plaintiff, Neal G. McCabe moves pursuant to CPLR 3213 for summary judgment in lieu of complaint against defendant Ernest G. Green for $85,000 plus interest in the amount of $17,877.04 and continuing at the statutory rate until the entry of judgment and costs.
Factual Background[1]
This is a curious case.
The corporate co-chair/defendant is hired at an annual salary of a half-million dollars.
The corporation is unable to pay the co-chair/defendant.
The other co-chair/plaintiff loans the defendant $85,000 in promissory notes over a period of one year.
*272 After approximately two years of no payment on the half-million-dollar salary, the defendant leaves and joins Matrix Advisors, headed by Richard Fuld.
Plaintiff then sues on the promissory notes.
The dispute: plaintiff argues promissory notes, failure to pay; defendant argues payments through notes were incentives to perform as unpaid co-chair.
Defendant was an original member of the “Little Rock Nine,” the group of nine African-American high school students who integrated Little Rock Cental High School in Little Rock, Arkansas in 1957. Defendant has received the Congressional Gold Medal from President Bill Clinton, and is a former Assistant Secretary of Labor in the Carter Administration. Defendant was also an executive with Lehman Brothers in Washington. Plaintiff is a former Lehman Brothers executive in New York.
According to plaintiff, in 2009, defendant executed four “demand” loan agreements and promissory notes in favor of plaintiff totaling $85,000: on March 23, 2009 for $30,000; on July 24, 2009 for $25,000; and two on August 13, 2009 for $15,000 each. The terms of the accrual of interest (at 6% compounding) and repayment are identical in all four notes (repayment can be made at any time, but no later than 15 days after a demand for payment). Further, the delivery of the demand for payment made by United States Postal Service certified mail was deemed “prima facie evidence of delivery.” On August 24, 2012, plaintiff caused a demand for payment to be served by US Postal Service certified mail, and payment has not been made within 15 days thereof. Therefore, based on the above, plaintiff contends he is entitled to judgment, and that any affirmative defenses or counterclaims would be conclusory or unsubstantiated.
In opposition, defendant argues that the notes are unenforceable on the ground of lack of consideration for the notes and fraudulent inducement.
According to defendant, after the collapse of Lehman, in 2008, Barclays Bank acquired the former Lehman business unit that employed both plaintiff and defendant. Plaintiff left Barclays Bank and formed Madison Asset Management Group, with the aim of creating an investment fund that would focus on investment opportunities in the minority community. Plaintiff sought defendant in order for defendant to leverage his “well-established network of high level contacts in the minority busi *273 ness and government community for the purpose of recruiting investors and identifying minority-focused business opportunities.” Thus, plaintiff asked defendant to join him at Madison as “co-chairman” for an annual salary of $500,000, and agreed to hire defendant’s secretary and provide office space in Washington, D.C.
After joining Madison, defendant received his biweekly salary, but as Madison was not adequately capitalized, plaintiff was unable to meet Madison’s payroll obligations. Defendant, however, continued working, and was able to obtain a $5 million investment in Madison from AON Corporation in Chicago, Illinois. In order to keep defendant working and to secure this investment, in March 2009, plaintiff agreed to personally pay defendant $30,000 in cash, provided that defendant execute a promissory note to plaintiff for that amount. Both parties understood that defendant was owed for salary that Madison did not then have the cash to pay, and that plaintiff agreed to not make demand on the note, that the note would be repaid by Madison when Madison obtained the cash from AON, and that if a demand for payment was ever made, plaintiff would have Madison indemnify defendant for the cost so that defendant would never have to repay the note. Defendant agreed to these terms because he was confident that Madison would have the cash needed from the AON investment to cover the payroll and defendant’s past-due salary.
When AON made its investment in Madison, instead of paying defendant, plaintiff caused defendant to execute the July and August 2009 notes under the same conditions noted above and with the understanding that Madison would repay the notes once the investment was finalized. At the time of the AON investment, plaintiff caused a limited liability agreement to be drafted which limited access to the company’s financial records to plaintiff, and gave defendant “non-executive officer” responsibility only for meetings with investors. Notwithstanding his title as “co-chair” of Madison, defendant had no access to Madison’s bank records.
Defendant continued to work for Madison, obtaining a consulting contract with AT&T in connection with AT&T’s attempt to merge with T-Mobile. However, plaintiff was unable to make payroll and rather than continue to work unpaid, defendant left Madison and joined Matrix.
After defendant left Madison, AT&T canceled its contract with Madison and signed a new contract with Matrix.
*274 Plaintiff threatened suit against AT&T, defendant and Matrix, and in December 2011, the parties entered into a settlement agreement in which Matrix agreed to pay Madison 40% of the monthly fee it was to receive. The AT&T settlement agreement expressly carved out the promissory notes defendant executed and defendant’s claims for unpaid compensation, as it was hoped that Madison would now have the revenue from the AT&T contract to pay defendant’s unpaid salary. However, in 2012, AT&T announced it was terminating efforts to acquire T-Mobile, and Matrix’s consulting contract ended.
Plaintiff then demanded payment on the notes.
Defendant argues that the notes, which represent compensation owed to him, do not contain a merger clause or any language barring parol evidence of fraudulent misrepresentation. Nor do they provide for an “absolute and unconditional” obligation. Plaintiff acknowledged that the money to be paid was for defendant’s salary, that plaintiff did not intend to make a demand on the notes, that the notes would be repaid as soon as Madison received the $5 million in cash from AON, and that if demand was made, plaintiff would cause Madison to indemnify defendant. Given plaintiffs failure to pay the notes with the monies received from AON, and later demanding payment of the notes, plaintiffs representations were false, false when he made them, and were made to induce defendant to secure the investment from AON. Further, under section 17 (b) (ii) of the LLC agreement, defendant’s two-year tenure at Madison and 20% vested shares entitle defendant to be indemnified and held harmless by Madison. Further, since the money paid was in partial satisfaction of monies plaintiff and his company owed to defendant as compensation, value was not provided to plaintiff and thus, the funds provided by the note do not constitute consideration sufficient to support the motion.
In reply, plaintiff argues that defendant admits all of the prima facie elements of plaintiffs action. Further, defendant cannot establish a defense of fraudulent inducement because he cannot prove justifiable reliance. The written terms of the notes contain terms (i.e., “demand”) different from those orally or otherwise represented, and defendant is presumed to have read the writing and cannot rely on any representations. And, consideration of parol evidence is inappropriate in light of the unambiguous terms of the notes. Further, the LLC agreement defendant submits is unsigned by defendant. Furthermore, defendant admits that he executed the notes, not because of state *275 ments made by plaintiff, but because he believed that Madison would soon have funds.
Plaintiff further argues that value was provided to defendant in that plaintiff cannot point to any personal obligation to pay defendant’s compensation on Madison’s behalf. Thus, sufficient consideration exists to support the notes.
Discussion
CPLR 3213 provides: “When an action is based upon an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint.” The prototypical example of an instrument within the ambit of the statute is of course a negotiable instrument for the payment of money — an unconditional promise to pay a sum certain, signed by the maker and due on demand or at a definite time (Weissman v Sinorm Deli, 88 NY2d 437 [1996]; see 7 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 3213.04 at 32-231 [2d ed 2004]). A document comes within CPLR 3213 “if a prima facie case would be made out by the instrument and a failure to make the payments called for by its terms” Weissman at 444, citing Interman Indus. Prods. v R. S. M. Electron Power, 37 NY2d 151, 154-155 [1975]).
“To establish prima facie entitlement to summary judgment in lieu of complaint, a plaintiff must show the existence of a promissory note executed by the defendant containing an unequivocal and unconditional obligation to repay and the failure of the defendant to pay in accordance with the note’s terms” (Zyskind v FaceCake Mktg. Tech., Inc., 101 AD3d 550, 551 [1st Dept 2012]). “Once the plaintiff submits evidence establishing these elements, the burden shifts to the defendant to submit evidence establishing the existence of a triable issue with respect to a bona fide defense” (id., citing Pennsylvania Higher Educ. Assistance Agency v Musheyev, 68 AD3d 736 [2d Dept 2009]), and the defendant is obligated to set forth in his opposition papers any defenses he may have on the merits and to lay bare his evidentiary proof supporting any such defenses (Alfred E. Mann Living Trust v ETIRC Aviation S.A.R.L., 78 AD3d 137 [1st Dept 2010]). And, “[i]t is settled that ‘invocation of defenses based on facts extrinsic to an instrument for the payment of money only do not preclude CPLR 3213 consideration’ ” (Alard, L.L.C. v Weiss, 1 AD3d 131, 131 [1st Dept 2003], citing Judarl v Cycletech, Inc., 246 AD2d 736, 737 [1998]).
*276 Here, the express terms of each note provide that defendant “promises to pay to the order of LENDER [plaintiff]” the amount noted therein, and that “[t]his is a ‘demand’ loan agreement and promissory note under which BORROWER [defendant] is required to repay in full the entire outstanding Loan Amount within 15 days of receiving a written demand from LENDER for full repayment of the Loan amount.” (Emphasis added.)
Plaintiff sufficiently establishes a prima facie case that the four notes were signed by defendant, and constitute written instruments by which the defendant explicitly obligated himself to make a required payment of a sum certain (see Interman, 37 NY2d at 156). Here, the allegation that defendant failed to pay the sums due under the notes is established, and undisputed (Orr v Yun, 83 AD3d 525, 525 [1st Dept 2011] [finding that “(p)laintiff established his entitlement to judgment as a matter (of) law by producing the promissory note executed by defendants and demonstrating that they failed to pay”]).
Instead, defendant presents two defenses to nonpayment: fraudulent inducement and lack of consideration, each addressed in turn.
As to a defense of fraudulent inducement, in order to sustain such a claim, one must show “misrepresentation or a material omission of fact which was false and known to be false by [plaintiff], made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury” (Lama Holding Co. v Smith Barney, 88 NY2d 413, 421 [1996]). The case of LibertyPointe Bank v 75 E. 125th St., LLC (95 AD3d 706 [1st Dept 2012]) governs this claim.
In LibertyPointe Bank v 75 E. 125th St., LLC, plaintiff, the lender, filed a foreclosure action against defendant based on a mortgage and a note which, according to the First Department decision, granted plaintiff the right to foreclose on the note and/or mortgage. Defendants argued “that they were fraudulently induced into entering into the mortgage transaction by the misrepresentations of plaintiffs former president, including his alleged assertion that plaintiff would not foreclose on the mortgage until the former president had paid a pre-existing debt which he owed to defendants’ ‘silent partner.’ ” (Id. at 706.) The First Department held that such
“oral agreement would directly contradict the terms of the note and mortgage which plaintiff sues upon, *277 and which vest plaintiff with an immediate right to foreclose upon occurrence of any default in payment. Nonetheless, the only merger clause . . . makes no reference to the ‘particular misrepresentations’ allegedly made here by the former president” (id.) and thus, “neither the parol evidence rule, nor the agreements’ merger clause, bars defendants’ claim of fraudulent inducement.” (Id.)
The First Department ruled that the defendants’ “claim of fraudulent inducement [was] sufficiently substantial.” (Id.)
Similarly, defendant’s assertion herein that plaintiff would not demand payment, which directly contradicts the terms of the notes, and the circumstances surrounding the making of the notes as detailed in defendant’s affidavit are sufficiently asserted. If “a contracting party may orally waive enforcement of a contract term notwithstanding a provision to the contrary in the agreement” (Bank Leumi Trust Co. of N.Y. v Block 3102 Corp., 180 AD2d 588, 590 [1st Dept 1992]), given that there is no merger or other provision in the notes barring the reliance on oral representations, defendant herein may pursue his fraudulent inducement claim premised on an oral misrepresentation to forgo demanding repayment of the notes.
The case law cited by plaintiff for the proposition that defendant cannot claim to have relied upon a fraudulent misrepresentation that directly contradicts the written instrument is in direct contravention to the First Department decision in LibertyPointe and not controlling (cf. Streit v Brooke, 2007 NY Slip Op 32463[U], *11 [Sup Ct, NY County 2007, trial order] [“Where, as here, a written instrument contains terms different from those orally or otherwise represented, a person is presumed to have read the writing and may not claim that she or he relied on the representations”]; Smith v Ameriquest Mtge. Co., 60 AD3d 1037 [2d Dept 2009]; Lewin Chevrolet-Geo-Oldsmobile v Bender, 225 AD2d 916 [3d Dept 1996]).[2]
However, defendant failed to meet his burden of showing lack of consideration (Carlin v Jemal, 68 AD3d 655, 656 [1st Dept 2009] [“Since plaintiff met his initial burden of demonstrating entitlement to recovery on the note by submitting proof *278 of the note and defendants’ default thereon, and defendants have not challenged the authenticity of their signatures on the note, the burden then shifted to defendants to demonstrate lack of consideration as a defense”]). The record indicates that the loan was funded, thereby defeating defendant’s defense of lack of consideration, “particularly where, as here, the note is ‘clear, complete and unambiguous’ on its face and recites that it was executed for value” (see Carlin v Jemal at 656-657, citing Di Marco v Bombard Car Co., Inc., 11 AD3d 960 [4th Dept 2004]).
Conclusion
Based on the foregoing, it is hereby ordered that the plaintiffs motion pursuant to CPLR 3213 for summary judgment in lieu of complaint against defendant Ernest G. Green for $85,000 plus interest in the amount of $17,877.04 and continuing at the statutory rate until the entry of judgment and costs, is denied; and it is further ordered that defendant shall serve his responsive pleading within 30 days of service of a copy of this order with notice of entry; and it is further ordered that the parties shall appear for a preliminary conference on March 5, 2013, 2:15 p.m.; and it is further ordered that plaintiff shall serve a copy of this order with notice of entry upon defendant within 20 days of entry.

. The factual background is taken from plaintiffs motion and defendant’s opposition papers.

. Arguably, while the notes require repayment upon demand, there is no language in the notes requiring plaintiff to make such a demand. Instead, the notes expressly provide that “BORROWER may make payment (s) to LENDER in amounts and at times as it chooses ...” and only require repayment in the event of a demand. Thus, the claim that plaintiff promised not to demand payment is not entirely inconsistent with the terms of the notes.