OPINION OF THE COURT
Bernard J. Fried, J.
This is a motion for summary judgment in lieu of complaint under CPLR 3213 on an interest rate swap agreement entered into by Allied Irish Banks, PLC (AIB) and the Young Men’s Christian Association of Greenwich (YMCA). AIB claims that the YMCA breached the swap agreement in a variety of ways, including by failing to pay its side of the swap agreement as payments became due, failing to disclose violations of certain covenants, and misrepresenting the facts of its financial position. I find that the interest rate swap agreement between the parties does qualify as an instrument for the payment of money only, and that summary judgment on the issue of liability should be awarded to AIB based on its claim that the YMCA has breached the agreement by failing to make payments as they became due. I deny summary judgment with respect to the amount of damages owing from the YMCA’s breach. I need not reach AIB’s claims that the YMCA additionally breached the agreement by violating certain loan covenants and misrepresenting material facts. Plaintiff Allied Irish Banks, PLC is a banking organization organized under the laws of Ireland and licensed to operate a branch in New York. Defendant YMCA is a not-for-profit corporation organized under Connecticut state law and maintains a business address in Greenwich, Connecticut.
*218 In an interest rate swap agreement, the parties agree to trade cash flows on a notional amount; often, as in this case, one party agrees to pay a fixed interest rate, while the other agrees to pay a floating interest rate set by reference to a market indicator.[1] The swap was intended to hedge approximately one half of the YMCA’s risk exposure on municipal bonds totaling $20,165,000 that were issued by the Connecticut Health and Educational Facilities Authority and held by the YMCA. Under the agreement, AIB agreed to pay the YMCA a floating interest rate set by the Securities Industry and Financial Markets Association Municipal Swap (SIFMA) Index[2] on a notional amount of $10,000,000. In turn, the YMCA agreed to pay AIB a fixed interest rate of 3.935% on the same notional amount. The notional amount was not exchanged, but was only a point of reference by which to set payments. Essentially, the amount due between the parties would be the difference between the floating rate and the fixed rate; in the months the floating rate was above the fixed rate, Allied Irish Banks would pay the YMCA the difference between the two rates, while in the months the fixed rate was above the floating rate, the YMCA would pay Allied Irish Banks the difference between the two rates.
Some time into the life of the agreement, the SIFMA market interest rate dropped below the fixed interest rate of 3.935% that the YMCA had covenanted to pay to AIB. The YMCA suffered economic difficulty and ceased payments. It is undisputed that the YMCA has not made payments on the interest rate *219 swap agreement since November 2009.[3] In September 2011, AIB elected “early termination” under the swap agreement.[4]
AIB alleges that the YMCA breached the terms of the contract by failing to provide a compliance certificate when it was required to do so,[5] placing an additional mortgage lien on its property without AIB’s permission in violation of the loan covenants,[6] failing to maintain the required expendable resources to operations ratio,[7] and failing to make required monthly interest rate payments.[8] AIB also alleges that by failing to reflect the new mortgage lien and change in the expendable resources to operations ratio on the financial statements provided by the YMCA to AIB, the YMCA made a materially incorrect or misleading statement, which is an event of default under the contract,[9] and that the YMCA’s failure to notify AIB of the breach of the expendable resources to operations ratio covenant in a timely fashion is an additional event of default.[10]
AIB requests summary judgment in lieu of complaint on its claim that the YMCA breached the interest rate swap agreement and seeks enforcement of the contract’s early termination provisions, which permit the nondefaulting party to set an early termination date and calculate a contractually defined “settlement amount,” which is owed when the necessary conditions for an early termination are met.[11]
To prevail on a motion for summary judgment in lieu of complaint, the plaintiff must provide proof of an agreement for money only, unconditional terms of repayment, and the defendant’s failure to pay. (SCP [Bermuda] v Bermudatel Ltd., 224 AD2d 214, 216 [1st Dept 1996].) The defendant must explicitly acknowledge the indebtedness, and the fact of the debt must be apparent from the agreement alone. (Weissman v Sinorm Deli, 88 NY2d 437, 444 [1996].)
*220 The core issue in this case is whether the interest rate swap agreement between AIB and YMCA qualifies as an instrument for payment of money only. This question apparently has not been considered by the New York courts; a search of procedurally similar cases in other jurisdictions is similarly unavailing. Based upon our precedent construing CPLR 3213, and without holding that interest rate swap agreements invariably qualify as instruments for the payment of money only, I rule that within the narrow facts of this case, the swap agreement in question is eligible for CPLR 3213 treatment.
An agreement does not qualify as an “instrument for payment of money only” if it requires proof outside the agreement to resolve the claim “other than simple proof of nonpayment or a similar de minimis deviation from the face of the document.” (Weissman, 88 NY2d at 444.) While the existence of other terms in an agreement is not a categorical bar to relief under CPLR 3213, the provisions cannot “require additional performance as a condition precedent to repayment, or otherwise alter the defendant’s promise of payment.” (Juste v Niewdach, 26 AD3d 416, 417 [2d Dept 2006]; Stevens v Phlo Corp., 288 AD2d 56 [1st Dept 2001].) The instrument must qualify for CPLR 3213 treatment at the time of signing; an instrument’s eligibility “can never depend upon the occurrence (or nonoccurrence) of any unrelated future event.” (Kerin v Kaufman, 296 AD2d 336, 338 [1st Dept 2002].) Thus, where the agreement includes other conditions that are not satisfied by the instrument itself, summary judgment is inappropriate.
However, an instrument is not rendered ineligible for CPLR 3213 treatment merely because it does not cite a sum certain on its face. (Persichilli v Metropolitan Paper Recycling Inc., 30 Misc 3d 1227[A], 2010 NY Slip Op 52381[U], *3 [Sup Ct, Nassau County, Nov. 30, 2010] [stating that it is “generally immaterial” that a note “may not recite a sum certain such that resort to some outside documents may be necessary”]; Key Bank of Long Is. v Munkenbeck, 162 AD2d 503, 504 [2d Dept 1990]; see Bank of Am., N.A. v Solow, 19 Misc 3d 1123[A], 2008 NY Slip Op 50830CU], *4 [Sup Ct, NY County, Apr. 17, 2008], affd 59 AD3d 304 [1st Dept 2009] [“A guaranty may be the proper subject of a motion for summary judgment in lieu of complaint whether or not it recites a sum certain, and the need to consult the underlying documents to establish the amount of liability does not affect the availability of CPLR 3213” (citations omitted)].) The interest rate swap agreement at issue in this case thus is not *221 disqualified as an instrument for payment of money only because of the lack of a predetermined sum owed on its face.
Evaluated on the day of signing, the agreement at issue in this case does not contain any condition precedent to payment, or obligate any party to nonmonetary performance. Proof of nonpayment coupled with evidence of the applicable interest rates, confirmation of which requires only a minor shift from the focus on the terms of the contract required by CPLR 3213, establishes a prima facie case. While the interest rate swap contract contains provisions that purport to obligate the defendant to meet a series of other conditions, specified in the loan covenants, these requirements are not conditions precedent to performance, nor do they require any act of performance on the part of the defendant. Rather, they “merely describe[ ] under what conditions the [defendant] is liable for actual damages.” (Bank of Am., N.A. v Lightstone Holdings, LLC, 32 Misc 3d 1244[A], 2011 NY Slip Op 51702[U], *2 [Sup Ct, NY County, July 14, 2011].) The rates upon which the swap agreement between the YMCA and AIB depended are publicly available and easy to ascertain.[12] Indeed, the external proof that would be required here is no greater than that which would be required to determine the debt on, for example, a guaranty on a loan subject to a variable interest rate, which already has been determined to be eligible for CPLR 3213 treatment. (See Solow, 2008 NY Slip Op 50830[U]; see also GE Capital Commercial, Inc. v Kazi Foods of N.Y., Inc., 30 Misc 3d 1230[A], 2011 NY Slip Op 50298[U], *4 [Sup Ct, NY County, Mar. 7, 2011] [rejecting defendants’ claim that agreement is ineligible for CPLR 3213 treatment because “(w)ith regard to the determination of the amount due . . . the Notes require the calculation of interest ‘based upon a series of complex variable factors’ ”]; A. Alport & Son, Inc. v Hotel Evans, Inc., 65 Misc 2d 374, 376 [Sup Ct, Special Term, Albany County 1970].) The only difference between a promissory note governed by a floating interest rate and the interest rate swap agreement at issue here is the absence of a principal.
Defendant argues that the agreement at issue in this case is analogous to that analyzed in Grossman v Clarey (133 AD2d 443 [2d Dept 1987]), and should therefore fail to qualify for *222 CPLR 3213 treatment. In Grossman, the Second Department considered a contract that required the defendants to provide advance payments or loans to the plaintiffs in the months in which the plaintiff’s distributions pursuant to a variety of limited partnership agreements did not reach a stated amount. In the months when the partnership distributions did reach the amount decided between the parties, the plaintiffs were required to repay or give credit for the payment advances that were provided by the defendant. The Court held that such an agreement was not an instrument for payment of money only because the agreement “provided for more than a simple unconditional promise by the defendants to pay a sum of money at a certain time or over a stated period.” (Grossman, 133 AD2d at 444.)
However, the agreement involved here differs from that in Grossman in several pertinent respects. The amounts due are determined by reference to an external public source, rather than set by yet another private document between the parties. The amount due in Grossman was difficult to calculate, in part, because of the number of agreements involved. Most importantly, the agreement in Grossman could reasonably be expected to involve issues of fact concerning who paid what and when. In contrast, the payment obligations in this case are certain. Gross-man thus is distinguishable from the case at hand.
The parties were aware at the time of signing the agreement that a debt would be due under specified conditions, and no partial performance is required to trigger the debt owed. The YMCA has acknowledged its debt.[13] Thus, the agreement qualifies as an instrument for payment of money only.
Even if the instrument sued on is for payment of money only, the standard for summary judgment must be separately satisfied. The standard under CPLR 3213 is the same as that under CPLR 3212; to prevail, the plaintiff must show the lack of triable issues of fact. If the plaintiff demonstrates a lack of factual issues, the burden shifts to the defendant to adduce additional evidence or affirmative defenses that raise issues of fact. If the defendant succeeds in showing the persistence of disputed factual issues, summary judgment is inappropriate and the case proceeds to trial. (Interman Indus. Prods. v R. S. M. Electron Power, 37 NY2d 151, 155 [1975].)
*223 In addition to its claim that the interest rate swap agreement fails to qualify as an instrument for the payment of money only, the YMCA interposes a variety of defenses to the enforcement of the agreement. The YMCA alleges that AIB breached the covenant of good faith and fair dealing, and it also claims novation, waiver, and estoppel. However, the YMCA has failed to substantiate any of these defenses. The YMCA provides no detail about any action or particularized representation by AIB that would amount to a breach of good faith and fair dealing. Beyond conclusorily referring to AIB’s “clear breach of the duty of good faith and fair dealing” by bringing the current lawsuit,[14] defendant does not provide any specific facts about AIB’s purported wrongful acts or omissions. It similarly provides no particularized facts supporting a claim of novation[15] or estoppel.[16]
The YMCA’s claim of waiver is likewise ineffectual. To establish a defense of waiver, the YMCA would need to show AIB’s voluntary abandonment or relinquishment of a known right. (Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442, 446 [1984].) Defendant does not provide more concrete details about any purported waiver. While the Leigh affidavit, to which defendant refers in order to substantiate its allegation, repeatedly references AIB’s “willingness to work with” the YMCA, it does not provide particularized facts supporting defendant’s assertion of waiver.[17] Plaintiff’s communications with defendant have repeatedly stated that its actions are without prejudice to its other rights and remedies.[18] The agreement itself also provides that a failure or delay in exercising a right, power, or privilege under the agreement shall not be construed as a waiver of that right, power, or privilege.[19] Thus, defendant has failed to prove its defense of waiver. An opposing party’s assertion of conclusory, unsubstantiated allegations is insufficient to raise an issue of fact mandating denial of summary judgment. (See Kornfeld v NRX Tech., 93 AD2d 772 [1st Dept 1983].) The YMCA has admitted that it owes a debt to *224 ALB, and does not assert a meritorious defense to the debt as a whole. While the YMCA states that it has not accepted AIB’s account of the amount owed by the YMCA to AIB under the agreement, it does not specifically fault any part of AIB’s calculation, nor does it claim that it owes no debt at all. The YMCA thus fails to raise a question of fact justifying the denial of summary judgment on liability.
AIB’s motion for summary judgment in lieu of complaint is granted, and the calculation of damages assigned to a Special Referee. As summary judgment has been granted on AIB’s claim that the YMCA breached the interest rate swap agreement by failing to make payments as they came due, I do not reach AIB’s alternative argument that the YMCA breached the agreement by allegedly violating loan covenants and misrepresenting material fact.
Accordingly for the reasons discussed above, it is ordered that the plaintiffs motion for summary judgment in lieu of complaint is granted as to liability against the defendant; and it is further ordered that the issue of damages is hereby referred to a Special Referee to hear and report with recommendations, except that, in the event of and upon the filing of a stipulation of the parties, as permitted by CPLR 4317, the Special Referee, or another person designated by the parties to serve as referee, shall determine the aforesaid issue; and it is further ordered that counsel for plaintiff shall, within 30 days from the date of this order, serve a copy of this order with notice of entry, together with a completed information sheet, upon the Special Referee Clerk in the Motion Support Office (Room 119M), who is directed to place this matter on the calendar of the Special Referee’s Part for the earliest convenient date.

. See Joint Study on the Feasibility of Mandating Algorithmic Descriptions for Derivatives, Sec Exch Comm’n & Commodity Futures Trading Commn at 6 (Apr. 7, 2011), available at http://www.sec.gov/news/studies/2011/ 719b-study.pdf. (“A swap is a bilateral agreement to exchange payments based on some agreed formula and according to a schedule of dates. Swaps may include contracts for the exchange of a fixed interest rate for a floating one [interest rate swaps] . . . An example of a ‘plain vanilla’ interest rate swap would be a contract composed, in economic terms, of a series of cash forward contracts, where one party makes periodic payments based on a fixed rate of interest while the other makes payments based on a floating interest rate”) (citations omitted).

. As the Securities Industry and Financial Markets Association explains, the SIFMA Index is a seven-day market index composed of tax-exempt variable-rate demand obligations compiled by Thomson Reuters Municipal Market Data, a service that creates analytic tools for institutional investors in the municipal bond market. (See About the Municipal Swap Index, SIFMA [Nov. 1, 2010], http://www.sifma.org/research/item.aspx?id=1690.)

. Plaintiffs motion for summary judgment in lieu of complaint (hereinafter plaintiffs motion) ¶¶ 38-79, 82; defendant’s mem of law in opposition to plaintiffs motion for summary judgment (hereinafter defendant’s mem of law) at 8; see plaintiffs motion, exhibit Z.

. Plaintiffs motion ¶¶ 19-22.

. Plaintiffs motion ¶ 30.

. Plaintiffs motion ¶ 32; see Master Agreement Schedule ¶ 4 (j).

. Plaintiffs motion ¶ 34; see plaintiffs motion, exhibit D.

. Plaintiffs motion ¶¶ 38-79.

. Plaintiffs motion ¶ 35; see Agreement § 5 (a) (iv).

. Plaintiffs motion ¶ 36.

. Plaintiffs motion ¶¶ 19-22; Agreement § 6 (c), (e).

. The fact that the agreement does not explicitly set out the applicable interest rate does not of its own accord make the agreement ineligible for CPLR 3213 treatment. (Schwartz v Turner Holdings, 139 AD2d 458 [1st Dept 1988]; see Community Natl. Bank & Trust Co. of N.Y. v I.M.F. Trading, 167 AD2d 193, 194 [1st Dept 1990].)

. See plaintiffs exhibit Z (“[The YMCA] acknowledges that it has not made all of the payments required under the swap agreement”); summary judgment hearing transcript at 29, Feb. 9, 2012.

. Defendant’s mem of law at 9.

. (See defendant’s mem of law at 10.) The Leigh affidavit asserts that AIB “feigned” support for the YMCA, but does not provide direct communications from AIB or other evidence to support this claim. (See e.g. Leigh aff ¶ 24.)

. See defendant’s mem of law at 10.

. See e.g. Leigh aff ¶¶ 17, 19, 20, 21, 23.

. See plaintiffs motion exhibits E-W

. See Agreement § 8 (f).