Great Rock Capital Partners Mgt., LLC v Wingtip Communications, Inc. (2024 NY Slip Op 00676)

Great Rock Capital Partners Mgt., LLC v Wingtip Communications, Inc.

2024 NY Slip Op 00676

Decided on February 08, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 08, 2024

Before: Oing, J.P., González, Shulman, Pitt-Burke, Higgitt, JJ. 

Index No. 651957/21 Appeal No. 1627-1628 Case No. 2022-03927 2022-04842 

[*1]Great Rock Capital Partners Management, LLC, Plaintiff-Respondent,
v
Wingtip Communications, Inc., Defendant-Appellant. 

Sheppard, Mullin, Richter & Hampton LLP, New York (Emily D. Anderson of counsel), for appellant.
McElroy, Deutsch, Mulvaney & Carpenter, LLP, New York (Nicholas K. Lagemann of counsel), for respondent.

Judgment, Supreme Court, New York County (Robert R. Reed, J.), entered September 29, 2022, awarding plaintiff $22,888,817.95, and bringing up review, order, same court and Justice, entered August 2, 2022, which granted plaintiff's CPLR 3213 motion, unanimously affirmed, with costs. Appeal from order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
The motion court properly found that plaintiff met its prima facieentitlement to relief pursuant to CPLR 3213 and that defendant failed to raise a disputed issue of fact through admissible evidence (see e.g. Simon v Industry City Distillery, Inc. 159 AD3d 505 [1st Dept 2018]).
Defendant argues the second amendment to the parties' loan agreement, on which the CPLR 3213 motion was based, is ambiguous, having set "January 31, 2019" as opposed to January 31, 2020 as the third payment deadline. It posits that payment deadlines are critical to the availability of CPLR 3213 relief. Because this ambiguity can only be resolved by resorting to extrinsic evidence, defendant contends that CPLR 3213 relief was improper. We disagree and find the motion court properly found the use of "January 31, 2019" to be a scrivener's error. The date of third payment deadline is discernible from the text of the second amendment itself. The incorrect date preceded the date the second amendment was executed (November 22, 2019), the first and second payment deadlines (December 16 and 31, 2019), and the forbearance date (January 31, 2020). Under these circumstances, this scrivener's error does not create a genuine issue of material fact sufficient to affect the disposition of this motion (see Matter of Wallace v 600 Properties, 86 NY2d 543, 548-549 [1995]).
The second amendment essentially required defendant, which had received a $15 million loan from plaintiff pursuant to the loan agreement, to repay $5 million on or before three dates, each defined as a "Clean Down Repayment Date." As drafted, these were: "December 16, 2019, December 31, 2019, and January 31, 2019." In the same provision, the term "Clean Down Requirements" is defined to mean defendant's aggregate Clean Down Repayments of (A) at least $5 million by December 16, 2019, (B) at least $10 million by December 31, 2019, and (C) $15 million by January 31, 2019, and further defines the completion of (C) as the "Clean Down Achievement Date." The document further states plaintiff will forebear from exercising otherwise available remedies as long as defendant performs each "[m]ilestone," and one milestone is that the "Clean Down Achievement Date shall have occurred no later than January 31, 2020." The second amendment was thus reasonably construed to mean that defendant's aggregate payment obligations were due by January 31, 2020.
Defendant also argues that CPLR 3213 relief was inappropriate because section 3 of the second amendment contains conditions precedent, yet there is no proof in the record that such conditions were satisfied. We [*2]likewise find this argument unavailing. As an initial matter, the second amendment itself undercuts defendant's claim that its effectiveness was necessarily contingent on fulfillment of the conditions precedent. Section 3 states the amendment "shall become effective upon the satisfaction of the following conditions precedent," yet that statement is immediately followed by "(the 'Second Amendment Effective Date')," a phrase that is separately defined to "mean[] November 22, 2019," i.e., a date independent of any precedent conditions. The amendment's language belies defendant's characterization of its terms as "conditional" in other ways as well. Its "Representations and Warranties" section includes an acknowledgment that "[t]his [a]mendment has been duly executed and delivered on behalf of each Loan Party Obligor (a group that includes defendant), by its duly authorized officer, and constitutes the legal, valid and binding obligation of each such Loan Party Obligor." Moreover, insofar as defendant's position constitutes a "defense based on or arising out of . . . the unenforceability" of its obligations under the second amendment, such defense was waived in the loan agreement whose terms, as defendant expressly acknowledged in the second amendment, "shall be and remain in full force and effect . . . and hereby are ratified and confirmed in all respects," and where it further acknowledged "the [l]oan [a]greement . . . shall remain unchanged and in full force and effect."
The motion court also properly found the "conditions precedent" at issue to be no barrier to CPLR 3213 relief because they do not "alter the defendant's promise of payment" (Allied Irish Banks, PLC v Young Men's Christian Assn. of Greenwich, 36 Misc 3d 216 [Sup Ct NY County 2012], aff'd 105 AD3d 516 [1st Dept 2013]), a promise that, per the "ratified and confirmed" loan agreement, remained "absolute and unconditional" (Loan Agreement §§ 1.10; 9[a]). Moreover, all the conditions were defendant's, not plaintiff's, obligation to fulfill (see BBM3, LLC v Vosotas, 216 AD3d 403, 404 [1st Dept 2023]; Park Union Condominium v 910 Union St., 140 AD3d 673, 674 [1st Dept 2016]; Stevens v Phlo Corp., 288 AD2d 56 [1st Dept 2001]).
Also unavailing is defendant's assertion that the motion should have been denied because it intends to raise counterclaims for fraudulent inducement, economic duress, and breach of fiduciary duty, as well as affirmative defenses, which present issues of fact. In light of defendant's express waiver of defenses in the loan agreement, and its acknowledgement therein that its repayment obligation was absolute and unconditional, its potential counterclaims and affirmative defenses did not preclude CPLR 3213 relief (see e.g. Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A., "Robobank Intl.," N.Y. Branch v Navarro, 25 NY3d 485, 493 [2015]; Citibank v Plapinger, 66 NY2d 90, 95 [1985]; Arbor-Myrtle Beach PE LLC v Frydman, 202 AD3d 464, 465 [1st Dept 2022]).
Even if the [*3]language of the loan agreement did not generally bar the counterclaims at the threshold, the motion court nevertheless properly found each one to be without merit. The proposed fraudulent inducement counterclaim is based on defendant's contention that plaintiff fraudulently induced it into signing the loan agreement via misrepresentations that the term sheet, issued in the course of negotiations, accurately reflected the audit and reporting requirements the loan agreement would impose, yet the agreement's ultimate provisions proved more stringent. Yet the loan agreement's merger clause specifies that the agreement "supersede[s] all prior and contemporaneous negotiations" and all "oral representations." Since the proposed counterclaim arises from the term sheet, which formed part of the parties' "negotiations," and further arises from plaintiff's alleged "oral representations" as to whether that term sheet accurately reflected what defendant's reporting and auditing obligations would be, the counterclaim falls within this provision's scope (see DuBow v Century Realty, Inc. 172 AD3d 622, 622 [1st Dept 2019]; Xi Mei Jia v Intelli-Tec Sec. Servs., Inc., 114 AD3d 607, 608 [1st Dept 2014]). The counterclaim also fails insofar as the alleged misrepresentations constitute nonactionable future statements; even as defendant describes it, the counterclaim arises from misrepresentations concerning "the extent of the oversight and reporting requirements that would be imposed on [defendant]."
The court also properly found the intended economic duress counterclaim to be without merit. Defendant avers that in 2019, two years before the loan's original maturity date as set forth in the loan agreement, plaintiff coerced it into agreeing to the accelerated repayment schedule in the second amendment by threatening to call an event of default based on defendant's nonmonetary defaults. Yet even as described by defendant, the underlying allegations amount to plaintiff warning defendant that it would exercise the rights it was contractually entitled to exercise; namely, to call an event of default due to defendant's defaults, which defaults were expressly acknowledged in the second amendment (see e.g. Wujin Nanxiashu Secant Factory v Ti-Well Intl. Corp., 14 AD3d 352, 352 [1st Dept 2005]; Fred Ehrlich, P.C. v Tullo, 274 AD2d 303, 304 [1st Dept 2000]).
The motion court also properly rejected the proposed counterclaim for breach of fiduciary duty, as defendant does not show it can assert such claim in the context of this debtor-creditor relationship (see e.g. Oddo Asset Mgt. v Barclays Bank PLC, 19 NY3d 584, 593 [2012]), or that the presence of an auditing requirement in the loan agreement changes this analysis. Lastly, we find defendant does not adequately show that its potential affirmative defenses raise issues of fact that should have barred CPLR 3213 relief.
We have considered defendant's remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION [*4]AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 8, 2024