## BLT Fund 9 Dayton's LLC v 601 Minnesota Inv. LLC

2025 NY Slip Op 32120(U)

June 13, 2025

Supreme Court, New York County

Docket Number: Index No. 650483/2024

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 48

-----------------------------------------------------------------------------------X

BLT FUND 9 DAYTON'S LLC,

|                          |                  |
| ------------------------ | ---------------- |
| **INDEX NO.**            | 650483/2024      |

Plaintiff,

| **MOTION DATE** |  |
| --- | --- |

- v -

601 MINNESOTA INVESTOR LLC,

| **MOTION SEQ. NO.** | 001 |
| --- | --- |

Defendant.

**DECISION + ORDER ON MOTION**

-----------------------------------------------------------------------------------X

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 24

were read on this motion to/for _____JUDGMENT - SUMMARY IN LIEU OF COMPLAINT_____.

Upon the foregoing documents, it is

In motion sequence number 001, plaintiff BLT Fund 9 Dayton's LLC moves,

pursuant to CPLR 3213, for summary judgment in lieu of complaint against defendant

601 Minnesota Investor LLC.

**Background**

On September 1, 2023, defendant executed a Promissory Note (Note) pursuant

to which plaintiff loaned defendant $2,750,000 in exchange for repayment with interest.[1]

---

[1] The Note states that "[i]nterest on the outstanding principal balance of this Note shall accrue from the Effective Date of this Note to but excluding the Maturity Date at a rate of interest equal to (i) four percent (4%) per annum plus (ii) fourteen percent (14%) per annum (such amount in clause (ii) the 'Deferred Interest'); provided, that the Deferred Interest shall not be paid when interest under this Note is paid on the Monthly Payment Date but instead shall accrue until the Maturity Date and be paid on a deferred basis at the Maturity Date (the rate described in clauses (i) and (ii), the 'Applicable Interest Rate')." (NYSCEF 5, Note at 3 [§ 1].)

**650483/2024 BLT FUND 9 DAYTON'S LLC vs. 601 MINNESOTA INVESTOR LLC** **Page 1 of 15**
**Motion No. 001**

(NYSCEF 5, Note at 3-4 [§ 1][2].)  The terms of the Note required that defendant make an interest payment on October 1, 2023;[3] the outstanding balance of the principal sum and interest was due on the maturity date, November 1, 2023.  (*Id.* at 3.)  Plaintiff asserts that defendant failed to make either payment.  (NYSCEF 4, Glasgow[4] aff ¶¶ 15, 17.)

On January 5, 2024, plaintiff demanded repayment by January 10, 2024. (NYSCEF 6, Demand Letter.)  No payment was received.  (NYSCEF 4, Glasgow ¶ 19.) Plaintiff commenced this action pursuant to CPLR 3213.  (NYSCEF 1, Summons; *see also* NYSCEF 2, Notice of Motion for Summary Judgment in Lieu of Complaint.)

**Discussion**

CPLR 3213 provides that "[w]hen an action is based upon an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint."

> "CPLR 3213 affords a speedy and efficient remedy to secure a judgment in certain cases where service of formal papers would be unnecessary for the expeditious resolution of the dispute between the parties. This accelerated procedure applies solely to an action based upon a judgment or an instrument for the payment of money only. In order to succeed on the motion, the cause of action must be proven by the instrument itself

---

[2] The Note also states that defendant "unconditionally promises to pay to the order of Holder under this Note the principal sum of TWO MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS AND NO/100 DOLLARS ($2,750,000.00) with interest on the unpaid principal sum of this Note in lawful money of the United States of America, with such interest at the Applicable Interest Rate (as defined below) and to be paid in accordance with the terms of this Note."  (*Id.*)

[3] "Commencing on October 1, 2023, and on the first (1st) calendar day of each subsequent month…, to and including the Maturity Date, [defendant] shall make a payment to Holder of interest on the outstanding principal balance of this Notice for the Interest Period (as defined below) immediately preceding such Payment Date.  (*Id.* at 2-3.)

[4] James G. Glasgow, Jr. is the chief executive officer of plaintiff.  (NYSCEF 4, Glasgow ¶ 1.)

[* 2]

and a failure to make payments according to its term. When the instrument itself calls for something more than the payment of money, however, a CPLR 3213 motion will be denied. For purposes of the statute, an instrument for the payment of money only must be a written unconditional instrument. Documents which set forth more than the simple promise by the obligor to pay a sum of money may not be sued upon by way of CPLR 3213." (*Tech. Tape, Inc. v Spray Tuck, Inc.*, 131 AD2d 404, 405-406 [1st Dept 1987] [internal quotation marks and citations omitted].)

"In order to qualify for CPLR 3213 treatment, plaintiff must be able to establish a prima facie case by proof of the agreement and a failure to make the payments called for thereunder. Once plaintiff has met its burden, it is incumbent upon defendant to establish, by admissible evidence, that a triable issue of fact exists." (*SCP, Inc. v Bermudatel Ltd.*, 224 AD2d 214, 216 [1st Dept 1996] [citations omitted].)

Here, plaintiff has established a prime facie case by submitting the Note and affidavit of James G. Glasgow, Jr., averring that defendant failed to make any payments on the Note. Therefore, the burden shifts to defendant.

Operating Agreement

Michael Silberberg, one of defendant's principals, avers that defendant was formed to acquire, renovate, and operate a department store complex in Minnesota (Property). (NYSCEF 10, Silberberg ¶ 1.) Defendant's original members,[5] managers,[6] and Dayton's Investor LLC entered into a Limited Liability Company Agreement of defendant (Original Operating Agreement). (*See* NYSCEF 11, Operating Agreement Recital B.) The Original Operating Agreement was amended twice with Amendment No. 2 as the operative Limited Liability Company Agreement (Operating Agreement). (*Id.*)

---

[5] 601 W Minneapolis Investors, LLC and Minneapolis LLC

[6] MS Minneapolis MM LLC and MK Minneapolis MM LLC

Defendant contends that the Note is not an instrument for the payment of money only because it references another agreement, the Operating Agreement, and thus, falls outside the ambit of CPLR 3213. "The prototypical example of an instrument within the ambit of [CPLR 3213] is of course a negotiable instrument for the payment of money— an unconditional promise to pay a sum certain, signed by the maker and due on demand or at a definite time." (*Weissman v Sinorm Deli*, 88 NY2d 437, 444 [1996] [citation omitted].)

> "Where the instrument requires something in addition to defendant's explicit promise to pay a sum of money, CPLR 3213 is unavailable. Put another way, a document comes within CPLR 3213 if a prima facie case would be made out by the instrument and a failure to make the payments called for by its terms. The instrument does not qualify if outside proof is needed, other than simple proof of nonpayment or a similar de minimis deviation from the face of the document." (*Id.* [internal quotation marks and citation omitted].)

However, "[r]eferences to other agreements in the instrument do not necessarily qualify or alter the obligation to pay on the instrument." (*Bank of Am., N.A. v Solow*, 19 Misc 3d 1123[A], 1123A, 2008 NY Slip Op 50830[U], *4 [Sup Ct, NY County 2008] [citations omitted]; *Bank of Am., N.A. v Solow*, 59 AD3d 304, 304 [1st Dept 2009] [affirming judgment entered based on underlying decision [19 Misc 3d 1123(A)], *lv dismissed* 12 NY3d 877 [2009].) Thus, the fact that the Note references the Operating Agreement is not an automatic bar to relief pursuant to CPLR 3213.

Defendant argues that court must consider the Operating Agreement to understand whether the Note's "Initial Maturity Date" or "Extended Maturity Date" is applicable. The court disagrees. Section 1 of the Note provides that

> "[t]he outstanding balance of the principal sum of this Note and all accrued and unpaid interest thereon and all other amounts due under the Note shall be due and payable on November 1, 2023 (the 'Initial Maturity Date'). The "Maturity

**650483/2024 BLT FUND 9 DAYTON'S LLC vs. 601 MINNESOTA INVESTOR LLC**
**Motion No. 001**

**Page 4 of 15**

[* 4]

Date" shall be the Initial Maturity Date unless extended pursuant to Section 9 below..." (NYSCEF 5, Note at [§ 1].)

Section 9 of the Note provides that

"[i]n the event that [defendant] does not elect to exercise its Conversion Option to Section 8 above (or is unable to exercise its Conversion Option pursuant to Section 8 above), then [defendant] is hereby granted an option to extend (the 'Option to Extend') the Initial Maturity Date to October 1, 2024 (the 'Extended Maturity Date'); provided that as a condition to [defendant] exercising such right, [defendant] shall have satisfied the following conditions as determined by [plaintiff ] in its sole discretion[.]" (NYSCEF 5, Note at 7 [§ 9].)

Section 9 sets forth the enumerated conditions including notice. (*Id.*) Defendant presents no evidence to support its contention that it exercised Section 9's extension option. Thus, the maturity date was November 1, 2023, and there is no need to go beyond the terms of the Note to determine when repayment was due.

Defendant also argues that the court must consider the Operating Agreement to determine the sum of damages for an "Event of Default." Section 3 of the Note states that

"[s]hould (i) a Change of Control Event occur under the Company Operating Agreement, (ii) [defendant] fail to use the proceeds of the Note for anything other than (A) making a principal payment to the Mortgage Lender and/or Mezzanine Lender, as applicable, in an amount equal to $5,000,000 and (B) funding certain reserves with the Mortgage Lender and/or Mezzanine Lender, or (iii) [defendant] fail to pay (a) any principal payment on the due date hereunder, or (b) any interest or other payment required pursuant to the terms hereof on the due date (each an 'Event of Default'), then the [plaintiff] shall have the rights set forth herein. (*Id.* [§ 3].)

The "Event of Default" that plaintiff seeks to recover damages for is "[defendant's] fail[ure] to pay (a) any principal payment on the due date hereunder, or (b) any interest or other payment required pursuant to the terms hereof on the due date" (NYSCEF 5, Note at 4 [§ 3]) and not the other two events. A default based on defendant's failure to

[* 5]

timely pay the principal and interest does not require the court to go beyond the terms of the Note. (*Id.*)

Next, defendant contends that the Note does not call for repayment of a certain sum because it does not provide for a certain sum of attorneys' fees and other fees[7] or a certain sum of damages if there was an "Event of Default," and thus, it falls outside the purview of CPLR 3213.

"However, an instrument is not rendered ineligible for CPLR 3213 treatment merely because it does not cite a sum certain on its face." (*Allied Irish Banks, PLC v Young Men's Christian Assn. of Greenwich*, 36 Misc 3d 216, 220 [Sup Ct, NY County 2012] [citations omitted]; *see also Eur. Am. Bank v Cohen*, 183 AD2d 453 [1st Dept 1992] [holding that the note at issue was "an instrument for the payment of money only within the meaning of CPLR 3213, even though it did not state a sum, but rather, a promise to pay the current balance in defendant's line of credit, because such amount was "readily ascertainable from plaintiff's bank records"].)

As to attorneys' fees, a determination of the amount of attorneys' fees owed does not prevent a determination on the issue of liability pursuant to CPLR 3213 where the Note provides for attorneys' fees. (*See Simon v Indus. City Distillery, Inc.*, 159 AD3d 505, 506 [1st Dept 2018]; *Orchard Hotel, LLC v Zhavian*, 34 Misc 3d 1219[A], *n 3 [Sup Ct, Kings County 2012] ["While there is no dispute as to the unpaid principal due and owing, a reference would be needed in order to compute interest, late charges, costs,

---

[7] The Note states that "[defendant] shall pay all actual, out of pocket costs and expenses, including actual, out of pocket reasonable attorneys' fees, costs, and expenses, arising out of an Event of Default by [defendant]. All income and/or franchise taxes levied or assessed upon the outstanding principal against any holder of this Note will be added to the outstanding principal of this Note." (NYSCEF 5, Note at 4 [§ 4].)

650483/2024  BLT FUND 9 DAYTON'S LLC vs. 601 MINNESOTA INVESTOR LLC
Motion No. 001
Page 6 of 15

expenses, and attorneys' fees.  However, this issue does not prevent a determination on the issue of liability under CPLR 3213."].)  Further, defendant's argument that uncertain fees, such as franchise taxes, fall outside the ambit of CPLR 3213 is inapplicable because plaintiff is not seeking to recover those fees (*see* NYSCEF 17, Plaintiff's Reply at 11 ["Plaintiff is not claiming income and/or franchise taxes or appraisal costs in its Motion"]); therefore, it is irrelevant whether those fees are certain.

Section 8 of the Note

Section 8 of the Note provides that

"[defendant] is hereby granted an option to convert this Note (including any Deferred Interest) and the debt evidenced hereby into an increased Preferred Equity Investment of [plaintiff] in [defendant] effective as of the Initial Maturity Date; provided that as a condition to [defendant] exercising such right (the 'Conversion Option'), [defendant] shall have satisfied all of the following conditions (the 'Conversion Conditions') as determined by [plaintiff] in its sole discretion:

(i) Notice: [Defendant] shall have delivered to [plaintiff] at least five (5) Business Days prior to the Initial Maturity Date, a written notice of Borrower's election to exercise the Conversion Option ('Conversion Notice'), which Conversion Notice may be revoked prior to the Initial Maturity Date.

(ii) Ownership/Control: Since the Effective Date and through and including the Initial Maturity Date, there has been no change in the economic, voting and management interest or Control of [defendant].

(iii) No Change of Control Event. No Change of Control Event exists (other than relating to a Leasing Milestone Event) at the time of delivery to [plaintiff] of the Conversion Notice or on the Initial Maturity Date.

(iv) Confirmation of Transaction Documents. [Defendant] shall deliver to [plaintiff] a written certification not less than five (5) Business Days prior to the Initial Maturity Date that no Change of Control Event Exists (other than relating to a Leasing Milestone Event) and that [defendant] and each of the Recourse Parties are in material compliance with all of the covenants in the Transaction Documents and that each of the Transaction Documents are ratified and confirmed in all respects.

(v) Legal Fees and Other Fees. On or before the Initial Maturity Date, [defendant]

[* 7]

shall pay (or reimburse [plaintiff]) for all fees, costs and expenses paid or incurred by [plaintiff] in connection with the Conversion Option, including all reasonable attorneys' fees, costs and expenses. Such payment shall be made in U.S. Dollars, in immediately available funds, by wire transfer and shall be made by [plaintiff] notwithstanding any revocation by Borrower of the Conversion Notice.

(vi) <u>Amendment to Maker Limited Liability Company Agreement</u>. [Defendant]  shall deliver to [plaintiff] at least five (5) Business Days prior to the Initial Maturity Date a fully executed Amendment No. 3 to the Limited Liability Company Agreement of 601 Minnesota Investor LLC in form substantially attached hereto as Exhibit A (the 'Third Amendment') which [plaintiff] shall forthwith countersign and return to [defendant].

(vi) <u>Consents</u>. [Defendant] shall deliver to [plaintiff] at least five (5) Business Days prior to the Initial Maturity Date all consents required in order to enter into the Third Amendment as determined by [plaintiff] in its sole discretion." (Conversion Option) (NYSCEF 5, Note at 6 [§ 8].)

Defendant argues that these conditions alter the obligation of payment in that they are obligations on defendant that may affect what is owed to plaintiff, refuting that the Note is one for the payment of money only.  However, the fact that the Note contains additional provisions, such as Section 8, is not an automatic bar to CPLR 3213 relief, as long as the additional provisions do "not require additional performance as a condition precedent to repayment, or otherwise alter the defendant's promise of payment."  (*Juste v Niewdach*, 26 AD3d 416, 417 [2d Dept 2006] [citations omitted]; *see generally First Interstate Credit Alliance, Inc. v Sokol*, 179 AD2d 583 [1st Dept 1992].)

Section 8 grants defendant an option to convert the Note provided that certain conditions are met and subject to plaintiff's sole discretion; it does not require some additional performance as a condition precedent to repayment or alter defendant's promise to pay.  Further, a "conversion option contained in [a] note does not alter the fact that the note is 'an instrument for the payment of money only' and a proper subject of a motion pursuant to CPLR 3213."  (*Simon v Indus. City Distillery, Inc.*, 159 AD3d 505, 505 [1st Dept 2018] [citation omitted] *see also Alpha Capital Anstalt v Moocho,*

[* 8]

*Inc.*, 2020 NY Slip Op 30743[U], *3 [Sup Ct, NY County 2020] [finding defendant's argument that, because the note is "a convertible one, payable in either equity interest or cash, it does not qualify as an 'instrument for the payment of money only'" without merit].)

Issues of Fact

Finally, defendant argues that there are three issues of fact that prevent plaintiff from obtaining summary judgment in lieu of a complaint. Specifically, defendant asserts the following issues of fact: (i) whether plaintiff prevented defendant from exercising the Conversion Option, resulting in defendant's default, (ii) whether the Note was procured through fraud and/or duress, and (iii) whether the Note represents equity owned by plaintiff and not debt owed by defendant.

Defendant asserts that, as preferred member,[8] plaintiff obtained rights and benefits above defendant's other members, which included total control of defendant's operating budget, approval rights as to refinancing defendant's mortgage and mezzanine loans, and the right to replace defendant's managing member. Defendant argues that plaintiff abused its power by asserting control over leasing space at Property, which effectively put defendant in default of certain leasing target milestones (Leasing Targets) set forth in a mezzanine loan agreement between defendant and nonparty Fortress Credit Corp. (Fortress), which were incorporated into the Operating Agreement. (NYSCEF 10, Silberberg aff ¶¶ 13, 22.) Specifically, Silberberg affirms

---

[8] On April 8, 2022, the parties executed the Operating Agreement, whereby plaintiff was admitted as a preferred member of defendant in exchange for a capital contribution. (NYSCEF 11, Amendment No. 2.)

[* 9]

that plaintiff rescinded "its March 2023 consent to the waiver of the Leasing Targets,"[9] which ultimately led to defendant's investors and third-party funding sources declining to invest further. (*Id.* ¶¶ 22, 25.)  As defendant owed Fortress a payment, and did not have the funding, plaintiff agreed to make a "further equity investment of $2,750,000," which resulted in the Note. (*Id.* ¶¶ 27-28.)

*Prevention of Conversion Option*

Defendant argues that when plaintiff rescinded its consent to waive the Leasing Targets, it made it impossible for defendant to exercise the Conversion Option, which if exercised, would have altered defendant's promise of payment.

"[A] party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition. Conversely, however, a plaintiff may not achieve through the prevention doctrine a right denied to it under the terms of the parties' agreement." (*OKL Holdings, Inc v Abercrombie & Fitch Stores Inc.*, 223 AD3d 476, 477 [1st Dept 2024] [internal quotation marks and citations omitted].)

Pursuant to the Operating Agreement, defendant needed to obtain plaintiff's written consent to amend the Fortress loan agreements to provide for a waiver of the Leasing Targets.  When plaintiff declined to consent to the waiver, it exercised its contractual right under the Operating Agreement.  The prevention doctrine "requires the party's 'active conduct . . . preventing or hindering the fulfillment of the condition.'" (*Fixed Income Shares: Series M v Citibank, N.A.*, 157 AD3d 541, 542 [1st Dept 2018]

---

[9] Silberberg avers that, because of various factors, including the pandemic, Fortress agreed to waive the Leasing Targets. However, amendment of loan documents require plaintiff's written consent. (NYSCEF 10, Silberberg aff ¶¶ 17-18.)

650483/2024   BLT FUND 9 DAYTON'S LLC vs. 601 MINNESOTA INVESTOR LLC
Page 10 of 15
Motion No. 001

[citation omitted].) It would be illogical to hold that plaintiff actively prevented or hindered defendant by exercising a right bestowed on plaintiff by defendant's Operating Agreement, which was executed prior to the Note. Plaintiff could not hinder defendant's compliance under these circummstances. Defendant is a sophisticated party which was aware of the terms of its own Operating Agreement when it negotiated the terms of the Note. (See *OKL Holdings, Inc,* 223 AD3d at 477 [finding plaintiff a sophisticated party who agreed to a detrimental condition when negotiating the contract.].)

*Fraud/Duress*

Defendant argues that there is an issue of fact whether the Note was procured under economic duress and/or fraud because plaintiff knew that defendant needed additional funding before an upcoming payment deadline. Defendant asserts that, when plaintiff rescinded its consent to the waiver of the Leasing Targets, it deterred additional investments, forcing defendant to accept plaintiff's proposition to execute the Note. (NYSCEF 10, Silberberg aff ¶ 22.)

The defense of economic duress is available when plaintiff "establishes that it was compelled to agree to the contract terms because of a wrongful threat by the other party which precluded the exercise of its free will." (*805 Third Ave. Co. v M.W. Realty Assoc.*, 58 NY2d 447, 451 [1983] [citations omitted].) "Just as a party cannot be guilty of economic duress for refusing to do that which he or she is not legally required to do, the threatened exercise of a legal right does not amount to economic duress." (*Friends Lbr. v Cornell Dev. Corp.*, 243 AD2d 886, 888 [3d Dept 1997] [citations omitted]; *see also Edison Stone Corp. v 42nd St. Dev. Corp.,* 145 AD2d 249, 256 [1st Dept 1989] ["It is equally well settled that the threatened exercise of a legal right cannot constitute

duress"] [internal quotation marks and citation omitted].)   Plaintiff had the right to not consent to the waiver and chose to exercise its right under the Operating Agreement. While defendant may have been under economic pressure to obtain further financing, pressure does not constitute duress.

To establish fraud, defendant must show a "misrepresentation or a material omission of fact which was false and known to be false by [plaintiff]."  (*Lama Holding Co. v Smith Barney Inc.*, 88 NY2d 413, 421 [1996] [citations omitted].)  Here, defendant makes no showing that plaintiff mispresented any fact or omitted any fact.  Rather, Silberberg avers that, on the eve of the payment deadline, plaintiff presented the "take it or leave it" offer of the Note.  (NYSCEF 10, Silberberg aff ¶ 27.)

Defendant has failed to raise an issue of fact as to duress and fraud.

*Equity vs Debt*

Defendant provides no support for its assertion that the Note would begin as a loan and convert to a Preferred Equity Capital Contribution.  To the contrary, the Note clearly provides that it is a loan.  (NYSCEF 5, Note at 3 ["make the loan evidenced by this Note"].)  Further, Section 8 of the Note created only an option to convert the Note into a Preferred Equity Investment of plaintiff.  (*Id.* at 6.)  The Note is clear on its face. While defendant asserts that plaintiff listed a new contribution of $2,750,000 as part of the Preferred Member Capital on an invoice, the court need not go beyond the four corners of the agreement to determine the parties' intention that this was a loan evidencing debt.  (*Banc of Am. Sec. LLC v Solow Bldg. Co. II, L.L.C.*, 47 AD3d 239, 243 [1st Dept 2007] [citation omitted] ["Where a contract is straightforward and

[* 12]

unambiguous, its interpretation presents a question of law for the court, to be determined without resort to extrinsic evidence"].)

Accordingly, it is

ORDERED that the plaintiff's motion for summary judgment in lieu of complaint is granted, and the Clerk of the Court is directed to enter judgment in favor of plaintiff and against defendants in the sum of $2,750,000.00, together with costs and disbursements as taxed by the Clerk upon submission of an appropriate bill of costs for a total of $_____; and it is further

ORDERED that the issue of the amount of interest and attorneys' fees owed is severed; and it is further

ORDERED that a Judicial Hearing Officer (JHO) or Special Referee shall be designated to hear and report to this court on the following issues:

(1) the calculation of interest owed to plaintiff and

(2) the amount of the reasonable value of legal services of plaintiff's counsel to be reimbursed by defendant to plaintiff

except that, in the event of and upon the filing of a stipulation of the parties, as permitted by CPLR 4317, the Special Referee, or another person designated by the parties to serve as Referee, shall determine the aforesaid issues; and it is further

ORDERED that the powers of the JHO/Special Referee shall not be limited beyond the limitations set forth in the CPLR; and it is further

ORDERED that this matter is hereby referred to the Special Referee Clerk for placement at the earliest possible date upon the calendar of the Special Referees Part (Part SRP), which, in accordance with the Rules of that Part (which are posted on the

website of this court), shall assign this matter at the initial appearance to an available JHO/Special Referee to hear and report as specified above; and it is further

ORDERED that parties shall immediately consult one another and Blank Rome LLP shall, within 15 days from the date of this Order, submit to the Special Referee an Information Sheet (accessible at the "References" link on the court's website) containing all the information called for therein and that, as soon as practical thereafter, the Special Referee Clerk shall advise counsel for the parties of the date fixed for the appearance of the matter upon the calendar of the Special Referees Part; and it is further

ORDERED that on the initial appearance in the Special Referees Part the parties shall appear for a pre-hearing conference before the assigned JHO/Special Referee and the date for the hearing shall be fixed at that conference; the parties need not appear at the conference with all witnesses and evidence; and it is further

ORDERED that, except as otherwise directed by the assigned JHO/Special Referee for good cause shown, the trial of the issue(s) specified above shall proceed from day to day until completion and counsel must arrange their schedules and those of their witnesses accordingly; and it is further

ORDERED that counsel shall file memoranda or other documents directed to the assigned JHO/Special Referee in accordance with the Uniform Rules of the Judicial Hearing Officers and the Special Referees (available at the "References" link on the court's website) by filing same with the New York State Courts Electronic Filing System (see Rule 2 of the Uniform Rules); and it is further

ORDERED that any motion to confirm or disaffirm the Report of the JHO/Special Referee shall be made within the time and in the manner specified in CPLR 4403 and Section 202.44 of the Uniform Rules for the Trial Courts.

202506132208AMASLEYB20376A6160D47C2B1C9B273934DDEBF

| **6/13/2025** | | |
|---|---|---|
| **DATE** | | **ANDREA MASLEY, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

[* 15]